## SCRIVEN et al. v. NORTH et al.

### (Circuit Court, D. Maryland. July 9, 1903.)

1. PATENTS—INFRINGEMENT—UNDER-GARMENTS.
   The Scriven patents, No. 378,465 and No. 472,555, each for improvements in under-garments, construed, and *held* not infringed.

2. TRADE-MARKS—DESCRIPTIVE TERMS.
   The words "Elastic Seam Drawer," used to designate a drawer having a strip of elastic knitted material inserted at the seams, are wholly descriptive, and cannot be monopolized as a trade-mark.

3. SAME—UNFAIR COMPETITION—IMITATION OF PACKAGES.
   Thirteen years after complainants had commenced the manufacture of a peculiar style of drawers, which had always been put up and sold in a distinctive box, and after they had acquired a high reputation and a large sale, defendants commenced the manufacture and sale of drawers in all respects similar in appearance, and put them up in boxes of the same size, shape, colors, and style of lettering and marking. *Held* that, while defendants had the legal right to imitate the manufacture of complainants, which was not patented, the imitation of the packages was evidently with intent to deceive purchasers, and constituted unfair competition, against which complainants were entitled to an injunction.

In Equity. On final hearing.

Briesen & Knauth and Frederick P. Fish, for complainants.
Gans & Harman, for defendants.

MORRIS, District Judge. Bill for injunction for infringement of patents No. 378,465, February 28, 1888, and No. 472,555, April 12, 1892, to Jeremiah A. Scriven, for improvements in under-garments, and for infringement of complainant's trade-marks, and for an injunction against unfair competition by packing and selling the under-garments made by defendants in boxes imitating the boxes of the complainant, and for selling and causing the defendants' garments to be sold as Scriven garments.

### 1. As to the Patents.

In 1885 the firm of J. A. Scriven & Co. began putting upon the market a special make of drawers, the body portion of which was of white jean, and along the seams on the inside and outside of the legs and along the seam at the back of the upper portion there were longitudinal insertions of buff-colored elastic knitted fabric, joining together the portions made of white jean. These garments were made after the method of the United States patent to C. A. Brown, No. 243,498, June 28, 1881 (now expired), of which patent Jeremiah A. Scriven was the owner, and they were so stamped. The specifications of that patent described an undershirt and drawers made of a woven material, with gores or gussets of an elastic knitted fabric inserted at places where it was desirable to give the garment greater elasticity, and the claim was for the combination of the woven body

¶ 2. Arbitrary descriptive or fictitious character of trade-marks and trade-names, see note to Searle & Hereth Co. v. Warner, 50 C. C. A. 323.

¶ 3. Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

fabric and the knitted insertions. The garments put upon the market by the complainants were called "Scriven's Patent," "Elastic Seam 50," and "Scriven's Elastic Seam Drawer 50," and since 1892 have been put up in white paper boxes with gilt edges of the form known as a "telescope box," which had and continue to have printed in blue ink in large script letters on the front side and also on the top "Scriven's Patent Elastic Seam Drawer," and the number "50," and an illustration of a pair of drawers. The drawers originally sold by the complainants, and which, as to the elastic seam, are similar to those made by both the complainants and defendants, were marked by a stamp on the waist band as being made under the patent of 1881; those made since 1892 are stamped "Scriven's Elastic Seam, patented Feby. 28, 1888; April 12, 1892. 50." The patents alleged by the bill of complaint to have been infringed are the two patents last above mentioned.

Patent No. 378,465, February 28, 1888, was granted to the complainant Jeremiah A. Scriven for an improvement on the kind of under-garments described in the expired Brown patent, No. 243,498, June 28, 1881, which was composed of a woven body with knitted insertions. This patent is for a similar under-garment, made of two different kinds of knitted fabric. The insertions are, as in Brown's patent, of a knitted fabric; but, differing from Brown's patent, the body was also of a knitted fabric longitudinally elastic, but less laterally elastic than the insertions. The claim is for the garment made of a knitted body longitudinally elastic with laterally and longitudinally elastic knitted insertions, the insertions to be more elastic than the body. The sole novelty of this combination was the use for the body material of a knitted fabric instead of a woven material, as appears both from the specifications and claim and by the file wrapper and contents; and this is all that differentiates it from the expired Brown patent of 1881. As the material of which the body of defendants' garment is made is the woven jean of the Brown patent, I find there is no infringement of the patent of 1888.

It is urged by the complainants that in the Brown patent the insertions are shown only as gores and gussets at certain points in the drawer, and not as a continuous insertion along the whole length of the seams. Observing the drawing which illustrates the Brown patent and shows his invention, it would be difficult to hold that it required invention to extend the insertions until they should be continuous. The construction that complainants put on the Brown patent is evidenced by their making drawers similar to those now made by them, and marking them as made under that patent. If the continuous insertion was not covered by the Brown patent, then it is not covered by any patent, for it is not claimed or indicated as an invention in any subsequent patent put in evidence.

The other patent in respect to which the bill of complaint charges infringement is No. 472,555, April 12, 1892, to Jeremiah A. Scriven, for an improvement on the articles of underwear described in the above-mentioned patent No. 378,465, of February 28, 1888. The improvement claimed is intended to be applied to drawers. The insertion for the inside of the legs is made continuous across the crotch,

and the insertion at the back is also continued at right angles across the crotch, and the novelty consists in not sewing down the overlying piece of insertion to the underlying piece. By leaving the upper piece unattached at its edges to the under piece, it is claimed that the requisite strength is obtained at the crotch, while the desired elasticity is not lost, as it is claimed would be the result if the upper piece was sewed down at its edges to the under piece. The use of this device by the defendants is denied, and the evidence leaves it at least doubtful. The defendants do stitch the upper strip of insertion to the under strip, but the complainants charge that it is stitched very lightly at the edges, and with the intent that, as soon as the garment is laundried, the stitches will break, and, the overlap coming loose at the edges, it attains the elasticity which is the purpose of the method described and claimed in patent No. 472,555. There is contradiction between witnesses as to whether in fact the edges of defendants' overlap do break away in ordinary washing, and the proofs leave the question of fact so doubtful that I could not base a decree upon it, even if I held the patent valid.

### 2. As to Trade-Mark.

The complainants claim as their trade-mark the words and figures "Scriven's Elastic Seam Drawer 50." The words "elastic seam" do very precisely describe and express the peculiarity of the complainants' garment. The purpose of the introduction of the knitted insertion in patents Nos. 243,498, 378,465, and 472,555 is to give elasticity at the places where in the ordinary garment there is the least elasticity; that is to say, at the seams. The insertion takes the place of the hard inelastic seam, and to describe a drawer of this make as an elastic seam drawer is to express in plain ordinary language its special quality and characteristic, and not alone its origin, make, or ownership. Such words cannot be appropriated as a trade-mark.

The designation used by the defendants and imprinted upon their goods and the boxes in which they are put up for delivery is "Standard Stretchy Seam Drawer." Even if the words claimed by the complainants could be sustained as a valid trade-mark, I do not find that those used by the defendants are so similar as to lead to confusion, if not displayed with an intentional similarity of design and lettering.

### 3. Unfair Competition.

It appears that in 1898, which was about 13 years after the complainants and Scriven had been making the elastic seam drawers, and had established a good market and reputation for their goods, the defendants also took up the business of making a similar product having in all respects the same appearance. The body is made of white jean with a buff-colored elastic insertion, and the defendants put them up in boxes made and lettered so like the complainants' that they could easily be confused one with the other in appearance. The box and the lettering are peculiar and distinctive, and the similarity could not possibly be other than intentional, and the intention could not have any possible purpose except unfair competition. The boxes of both are of the same size, both of the telescope kind, both white with

gilt edges, both printed with large script type in blue ink on a white ground and with the lettering similarly arranged, and with the same illustrative picture of a pair of drawers, and both with the figures 50. There is evidence that confusion has arisen very detrimental to the complainants' business and reputation. The complainants have established a reputation for producing a high grade of goods, and have built up an extensive and valuable good will, and the defendants can have but one purpose in dressing the goods of their manufacture to look so precisely like the complainants', and that is to deceptively induce buyers to take an article which looks like the manufacture of the complainants, but which is made by the defendants. The defendants make their drawers of white jean, and select a buff-colored insertion, which causes them to look precisely like complainants'; and they imprint on the waist-band a stamp which, at a careless glance, is not at once distinguishable from complainants'. These are imitations of the complainants' goods, which, no matter with what motive done, the court cannot enjoin, because, if the complainants have no patent which is infringed, any one may copy the complainants' make of drawers; and the stamp imprinted is one in common use, and, when examined, is different; but the shape, color, and lettering of the boxes in no way results from the manufacture, but is an intentional imitation of a style of putting up complainants' goods, by which they have come to be known in the trade, and which must have been designedly adopted by the defendants for the deceptive purpose of misleading as to the origin of the goods, and of causing their goods to be deceptively substituted for the complainants'.

I will sign a decree in accordance with the views expressed in this opinion.