### J. A. SCRIVEN CO. v. MORRIS et al.

(Circuit Court, D. Maryland. June 21, 1907.)

1. TRADE-MARKS AND TRADE-NAMES—UNFAIR COMPETITION—EFFECT OF EXPIRATION OF PATENT.

Complainant made and sold men's drawers, under a patent which covered the insertion in the seams of a strip of elastic material; such strip as made by complainant being of knitted fabric made of Egyptian yarn, the natural color of which is yellor or buff, while the body of the garment was of white jean. After the patent expired, complainant continued to make and sell the garments which had become known to the trade and consumers as its product. *Held*, that it had no longer a monopoly in the right to use such elastic seams, which were the subject-matter of the patent, nor in the right to the color, and that defendants were within their

rights, and not chargeable with unfair competition in making and selling similar drawers, having a yellow or buff elastic seam, whether made of Egyptian yarn or of American cotton dyed, where the markings of the goods and packages were such as to negative any intention to deceive purchasers as to the origin of the goods, and it being shown that American cotton knit fabric dyed yellow or buff had for many years been extensively used in making underwear, and had been used in connection with white jean prior to such use by complainant, and was a staple article of commerce.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 81.

Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

2. SAME—SIMILITUDE IN NAMES OR DESIGNATION OF ARTICLE.

The marking of drawers made by defendants as "Morris Web Seam Drawer" is not such a simulation of complainant's designation of "Elastic Seam Drawer" as to evidence an intention to deceive the public or create confusion; both designations being properly descriptive of the article to which they are applied, and defendant's garments being further plainly marked to show their origin.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 82.]

In Equity. Bill of complaint to enjoin defendants from infringing complainant's trade-mark and from unfair competition in making and selling men's drawers made of white jean with buff colored elastic insertion along the seams.

Briesen & Knauth, for complainant.

Gans & Haman, for defendants.

MORRIS, District Judge. The subject-matter of this suit was brought to the attention of this court in 1901 by the complainant entering a suit in equity for injunction and account against North Bros. and Strauss, alleging infringement of two patents owned by J. A. Scriven for improvements in underwear, and for infringement of the complainant's trade-mark and for unfair competition in business. By a decree of the Circuit Court in that case it was held (124 Fed. 894) that the two patents had not been infringed; that the claim of the complainant to the words "Scriven's Elastic Seam Drawer, 50," was not a valid trade-mark, and if valid it was not infringed by the defendants' use of the words "Standard Stretchy Seam Drawer"; that the manufacture of drawers of white jean with buff elastic insertion at the seams after the expiration of the original patent to Brown, No. 243,498, June 28, 1881, was open to every one; but that the manner in which the defendants in that case had imitated the lettering and general appearance of the boxes in which the drawers of complainant's manufacture were put up for sale was intended to mislead purchasers and to create confusion as to the origin of the goods and should be enjoined. Upon appeal to the Circuit Court of Appeals for the Fourth Circuit (134 Fed. 366, 67 C. C. A. 348), the decree was modified, and in a very full and learned opinion the court held that, although the complainant had failed to establish a valid technical trade-mark, the defendant should be enjoined on the ground of unfair competition from using the words "Elastic Seam" or "Stretchy Seam," and from using a curved stamp so like ·complainant's as to be

readily mistaken for it, and that they should be enjoined from the use of any insertion at the seams of dyed buff or yellow in imitation of Scriven's buff insertion. The court said: "They (the defendants) cannot be enjoined from the use of Egyptian or other yarns for such insertion, the natural color of which may be buff or yellow." It is upon the application of the sentence above quoted that I find the present case turns, as well as upon the contention now made by the complainant that it is entitled to the exclusive use, as a trade-mark, of the yellowish longitudinal strip of insertion on any men's drawers, no matter how otherwise marked, and are entitled to prevent the defendants from using the words "web seam" or "jersey seam" in connection with the defendants' make of drawers.

The complainant's boxes, in which the goods of its manufacture are sold to the trade, are marked "Scriven's Patent Elastic Seam Drawer," all in blue ink, with an outline picture of a pair of drawers. The goods of defendants' manufacture are marked: "Web Seam Drawers. Morris & Co., Makers, Baltimore"—in blue and red, with the letters M. M. in a red lozenge, and a red, white, and blue shield and anchor. I do not find that there is any suggestion of resemblance in these boxes and the imprints on them in any particular. The drawers themselves of complainant's make are stamped in a semicircle: "Scriven's Elastic Seam. Trade-Mark. Patented 50." The defendants' drawers are stamped in an ellipse: "The Web Seam. Morris & Co. Warranted. Pepperell." There is also sewed on the waistband of defendants' drawers a printed card label in blue and red: "Made and Warranted by Morris & Co., Baltimore, U. S. A. Union Made"—with also a shield and anchor in red, white, and blue. They also have sewed on the waistband a woven label of cotton cloth in red and white, with the lettering: "Morris & Co., Baltimore. Trade-Mark"—with a picture of a shield and anchor. I find that the most casual inspection discloses that there is no deceptive similarity.

In the beginning of their manufacture of these elastic seam drawers about 1899, the defendants made a quantity of them for Wilson & Bros. of Chicago, and on these they had only the stamp: "Jersey Seam. Warranted. Pepperell. 129." But this they had disused for some time before this bill was filed, and, instead, they had been using a stamp in an elliptical form "Morris & Co. Ideal. Warranted"—together with the paper label sewed on, and also the woven label.

There being no imitative similarity in the boxing or marking of the two makes of drawers, the similarity in appearance results solely from the fact that the Scriven drawers are made from white jean, with an insertion of yellowish-colored elastic at the seams, and so are the defendants, and for that reason they look alike. Whether this is a permissible or an unlawful resemblance would, under the ruling in the case of Scriven v. North and others, in the Circuit Court of Appeals, depend upon whether the buff-colored insertion was made of genuine Egyptian cotton, the natural color of which is buff, or was made of cotton of a different origin, the natural color of which was not buff, but which had been dyed or stained a buff color, and was used by the defendants for the purpose of imitating the complainant's drawers, with the design of creating a deceptive similarity.

The original patent, No. 243,198, June 28, 1881, under which the complainant began manufacturing drawers with elastic insertion at the seam, having long since expired, any one can make similar drawers of any material, provided they are not guilty of unfair competition by unlawfully and deceptively dressing up their goods so as to deceive the public into the belief that they are of the complainant's manufacture. In the testimony in the present case, the question of the use of buff-colored elastic material for underwear, and the production of buff-colored yarn for use in manufacture, was much more fully gone into, and much testimony was taken with regard to the elastic material used for the elastic insertions given by witnesses who were manufacturers and selling agents. The allegation of the bill is that about November, 1891, the J. A. Scriven Company, the complainant, was incorporated, and immediately thereafter began making and selling men's drawers, and for the purpose of distinguishing its manufacture of drawers it adopted a peculiar distinguishing feature, viz., the use of a buff-colored strip down each side and back extending from the waistband to the ankles, which was a departure from the appearance of men's drawers made by others which were of uniform color. This does not seem to be a full statement of the facts.

The fact is that, when the drawers made under the Brown patent of 1881 were put upon the market by J. A. Scriven in 1884, they were marked "Patented," and were made of white jean, with buff-colored elastic insertions, and have been ever since so made, so that the patented drawer with the buff insertion became very generally known as Scriven's drawers. But, as this patent has now expired, no one can be restrained from making the patented drawer, even though the public knows it only as Scriven's drawer, provided he marks it with his own name, and does not so mark and dress it up as to imitate the complainant's, and palm it off as of the complainant's manufacture. If the defendants have in this case succeeded in showing that the buff color was not a distinctive mark with respect to underwear, but was commonly used, and that a buff-colored elastic knitted material for underwear was a common material commercially well known when first used by Brown and Scriven, then it seems to me that the fundamental basis of the complainant's contention disappears.

The right of others to use elastic insertion made of Egyptian cotton such as Scriven used was not denied by the ruling of the Circuit Court of Appeals, and, if it is shown that other buff-colored cotton was in comman use for underwear at the time Brown and Scriven adopted the buff color, 1 do not think complainant's claim can be maintained. There is testimony offered by the defendants of credible witnesses, who testify that it was common, before the complainant's drawers were put upon the market, to make white jean drawers with buff-colored knitted anklets, and drawers of white jean with buff-colored waistbands, and vice versa, and that there was on the market quantities of balbriggan summer underwear always of a buff color. The reason for using buff color for the under garments, or for the elastic knitted portions, is that long staple Egyptian cotton is the best adapted for it, and its natural color is buff. The natural color of American cotton is something between white and buff, which is not a pleasing color, and it is common

either to bleach it white, or to stain or dye it buff, and it is then a commercial article commonly used when the price of Egyptian cotton is high, and it is perfectly natural and customary at such times to use the artificially colored American cotton, which is a commercial article, for the elastic portions of underwear, instead of naturally colored Egyptian. The elastic material made of American cotton is bought by the manufacturers of drawers from the cotton spinner simply because it is cheaper and is pleasing to the eye and popular with the public.

In Marvel & Co. v. Pearl, 133 Fed. 160, 162, 66 C. C. A. 226, 227, it is said:

"Unfair competition is not established by proof of similarity in form, dimension, or general appearance alone. When such similarity consists in constructions common to, or characteristic of, the articles in question, and especially when it appears to result from an effort to comply with the physical requirements essential to commercial success, and not to be designed to misrepresent the origin of such articles, the doctrine of unfair competition cannot be successfully invoked to abridge the freedom of trade competition."

If, for example, the patentee of a newly invented raincoat should during the life of the patent always line the sleeve with a buff-colored lining, so that the garment became associated in the minds of buyers with a buff-colored sleeve lining, it could not be successfully contended, after the expiration of the patent, that no one but the patentee could use a buff-colored sleeve lining because it might mislead purchasers with regard to the origin of the coat on account of its association. Howe Scale Co. v. Wyckoff, Seamans & Co., 198 U. S. 118–140, 25 Sup. Ct. 609, 49 L. Ed. 972.

The present case is stronger than the supposed one, for the strip of insertion which the complainant seeks to enjoin the defendants from using is the whole of the actual invention which was protected by the patent. The complainant is now seeking to have the court rule that, although by the expiration of the patent the use of the strip of insertion is free to all, the defendants are to be enjoined from using it because they use it of the same color as the complainant and the patentee did when they were operating under the patent. To so decide would be in many cases to extend indefinitely the monopoly of the patent. Moreover, I do not find that it is established by proof in this case that Scriven or Brown was the first to use in the manufacture of underwear a buff-colored elastic material in connection with a white jean drawer. Further, I think the complainant's contention untenable by reason of the broad proposition that no valid trade-mark can be acquired in the use of a color not connected with some symbol or design. Leschen Rope Co. v. Broderick, 201 U. S. 166, 26 Sup. Ct. 425, 50 L. Ed. 710. In the present case, the buff color was connected with the patented design, but, the patent having expired, the design has become common property, and nothing is left but the claim to the buff color. That a monopoly cannot be acquired in the use of a color or colors is very fully discussed in Diamond Match Co. v. Saginaw Match Co., 142 Fed. 727, 74 C. C. A. 59, in which it was held that there could be no exclusive right acquired to manufacture tipped matches with heads partly red, even though the complainant was the first to put them on the market. It does not seem maintainable that the defendants

can be enjoined from using the buff-colored insertion, unless, as was done by the defendants in the Scriven v. North Case, it is used with other peculiarities of the complainant's goods in such manner as to constitute deceptive imitation. A retail seller may say to a buyer, "This is a drawer made according to the Scriven patent," or, "This is an elastic seam drawer the same as Scriven makes," or may deceptively say, "This is a Scriven drawer"; but this is a deception for which the defendant is not responsible if they plainly mark their 'make of drawers and do not aid the deception by simulating complainant's marks.

It is urged by the complainant that the use by the defendants of the designation "Morris Web Seam Drawer" is a simulation of complainant's designation of "Elastic Seam Drawer," which was originally applied by the complainant to designate the patented drawer, and that it is evidence of an intention to deceive the public and create confusion. But I do not find that either in sound or appearance it is an imitation of complainant's designation, and I find that it resembles complainant's designation only as one descriptive name of a seam made elastic by a knitted insertion must resemble another descriptive name for the same thing.

It is urged, in support of the complainant's contention, that this court should regard the case of J. A. Scriven Company v. Girard Company, in the United States Circuit Court for the Southern District of New York (140 Fed. 794), heard on appeal by the United States Circuit Court of Appeals for the Second Circuit (148 Fed. 1019, 79 C. C. A. 533), as having decided the issues raised in the present case. In that case the relief granted was against using the words "Elastic Seam" or "Stretchy Seam" in connection with the buff strip, and the injunction as modified by the Court of Appeals went no further than to enjoin the use of those words in connection with men's drawers with a yellow insertion, or from using those words in connection with insertion of any other color unless accompanied with an unmistakable marking specifying that such drawers were not the product of the Scriven Company. The use of the words "Web Seam" is not in my opinion within the prohibition of that decision, which is against the use of "Elastic Seam" or "Stretchy Seam," and in the present case the defendants do mark their drawers so as to plainly indicate that they are not the product of the Scriven Company.

It is also urged that injunctions granted by the Circuit Court for the District of South Carolina against certain dry goods dealers of South Carolina who were selling drawers made by these defendants are conclusive against these defendants; but these defendants were not parties to those cases. Those cases do not appear to have been seriously contested, and in my opinion these defendants are not estopped by them. The injunction restrained the defendants in the South Carolina cases from selling drawers having thereon any insertion at the seam of a buff or yellowish color in imitation of Scriven's. The proof in this case, as I find, shows that the use of a yellowish insertion is not an imitation of Scriven's manufacture, but is the lawful use of a commercially well-known knitted material largely sold on the market, sometimes made of Egyptian cotton, and sometimes of American colored cotton, and long before it was used by Scriven it was very generally used for under-

wear. I think it must have been made to appear in those South Carolina cases that the defendants in those cases were guilty of positive acts of deception in conducting their sales.

There are other defenses urged by the defendants which might claim attention, but the defense upon the merits appears to me to be fully established, and I do not find it necessary to consider others.

I will sign a decree dismissing the bill of complaint.