CHAPIN-SACKS MFG. CO. v. HENDLER CREAMERY CO. et al.

HENDLER CREAMERY CO. et al. v. CHAPIN-SACKS MFG. CO.

(Circuit Court of Appeals, Fourth Circuit.    October 10, 1918.)

Nos. 1584, 1620.

1. TRADE-MARKS AND TRADE-NAMES ⬤=3(5)—CHARACTER OF WORD—QUALITY.
   No words which in their ordinary signification, or in their trade signification, merely describe the quality of the article to which they are applied, can be exclusively appropriated as a trade-mark.

2. TRADE-MARKS AND TRADE-NAMES ⬤=3(5)—"VELVET."
   "Velvet," in its primary meaning, signifies cloth, substantial, soft, and smooth to the touch, and is used in a secondary sense as designating the qualities of consistency, softness, and smoothness; and hence the words, "The Velvet Kind," cannot be appropriated by a manufacturer of ice cream as a trade-mark for his product.

   [Ed. Note.—For other definitions, see Words and Phrases, Second Series, Velvet.]

3. TRADE-MARKS AND TRADE-NAMES ☞45—REGISTRATION—PRESUMPTION.

The allowance of a trade-mark by the Patent Office furnishes a strong presumption of its validity; but a trade-mark in the words "The Velvet Kind," as applied to ice cream, being invalid, cannot be sustained because of the presumption.

4. TRADE-MARKS AND TRADE-NAMES ☞69—APPROPRIATION—INTENT TO DEFRAUD—INFERENCE.

Where defendants used words in which complainant had acquired a valid trade-mark, such use of itself evidenced an intention by defendants to defraud and palm off their product as that of complainant, although the inferences of fraud and unfair competition may be rebutted, in exemption of damages.

5. TRADE-MARKS AND TRADE-NAMES ☞67—UNFAIR COMPETITION—PROTECTION.

Even where there is no technical trade-mark, a dealer may acquire property rights in words not the subject of a trade-mark, which the courts will protect upon proof of unfair competition.

6. TRADE-MARKS AND TRADE-NAMES ☞78—UNFAIR COMPETITION—PROTECTION.

Where complainant built up an extensive trade in Washington, D. C., selling its ice cream under the descriptive words, "The Velvet Kind," that did not give complainant any right to exclude others from using such words in a place where it had not associated its ice cream with the designation, and defendant might adopt the words to describe its ice cream sold in Baltimore.

7. TRADE-MARKS AND TRADE-NAMES ☞86—ACTION—LACHES.

While mere delay or acquiescence cannot defeat the remedy by injunction in support of the legal right to a trade-mark, yet where complainant, which did not have a technical trade-mark in the words "the Velvet Kind," under which it sold its ice cream, abandoned a suit against defendant, who had begun selling ice cream in another city under the same name, such abandonment estopped complainant from obtaining a decree from profits.

8. TRADE-MARKS AND TRADE-NAMES ☞97—UNFAIR COMPETITION—RELIEF.

Where complainant had built up an extensive trade in ice cream under the name "The Velvet Kind" in one city, and defendant had appropriated that name for its ice cream, which it sold in another city, held that, on defendants beginning to sell ice cream in a third city in competition with complainant, it was bound to use the utmost good faith to distinguish its product from that of complainant, but should not be enjoined from entering territory in which the complainant had not established a market.

9. TRADE-MARKS AND TRADE-NAMES ☞97—UNFAIR COMPETITION—RELIEF.

Where complainant had built up an extensive trade in ice cream under the name "The Velvet Kind," a decree enjoining defendant from advertising its ice cream under that name, without the distinct statement that it is "not 'The Velvet Kind' made by" complainant, held not to afford the latter sufficient protection, as such an advertisement, without a statement that defendant's ice cream was inferior, would indicate that defendant was claiming to sell ice cream superior to that of complainant.

10. APPEAL AND ERROR ☞1171(3)—REVERSAL—COSTS.

While it is the general rule in equity that costs are in the discretion of the trial court, and that no appeal will lie upon a decree merely upon the ground of error in awarding costs, yet, where the decree is erroneous in any other respect, the appellate court may reverse or modify it with respect to cost.

Waddill, District Judge, dissenting in part.

Appeals from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Bill by the Chapin-Sacks Manufacturing Company against the Hendler Creamery Company and another. From the decree, which granted part of the relief sought (231 Fed. 550), both parties appeal. Modified.

Isaac Lobe Straus, of Chicago, Ill. (Walter A. Johnston, of Washington, D. C., on the brief), for plaintiff.

John Watson, Jr., of Baltimore, Md. (Vernon Cook, of Baltimore, Md., on the brief), for defendants.

Before KNAPP and WOODS, Circuit Judges, and WADDILL, District Judge.

WOODS, Circuit Judge. In these appeals two mixed questions of law and fact are to be decided: Were the words, "The Velvet Kind," applied to ice cream in 1905, so descriptive of quality that they could not be appropriated as a trade-mark by complainant, Chapin-Sacks Manufacturing Company?

Assuming that they were, did the use by the defendant Hendler, and his successor in business, Hendler Creamery Company, of the words, "The Velvet Kind," and of containers and wagons similar to those used by complainant, nevertheless amount to unfair competition —the unfair appropriation of the good will of the complainant and the reputation of its ice cream?

[1] The first question is not free from difficulty, but it must be answered in the affirmative. No words which in their ordinary signification or in their accepted trade signification merely describe quality in the article to which they are applied can be excluded by one trader from use by others and appropriated as a trade-mark. Manufacturing Co. v. Trainer, 101 U. S. 51, 25 L. Ed. 993; Lawrence Manufacturing Co. v. Tennessee Manufacturing Co., 138 U. S. 537, 11 Sup. Ct. 396, 34 L. Ed. 997.

[2] "Velvet," in its primary meaning signifies cloth, substantial, soft, and smooth, without distinct particles causing roughness to the touch. With this signification, "velvet" and "velvety" are applied descriptively in common speech to other articles; and in this secondary sense the words are used almost as commonly as in their primary sense. Perhaps no other words applied to ice cream so well describe the qualities of consistency, softness, and smoothness—the absence of roughness to the sensitive touch of the tongue produced by distinct particles of ice. The word "velvet" was in this sense becoming more markedly descriptive in 1905, when complainant commenced its business; real cream having so largely ceased to be the chief constituent of ice cream, and the volume of the ice cream business having so vastly increased. It is not denied that at least two or three manufacturers and dealers in different parts of the country had before 1905 used the word "velvet" or "velvet kind" as descriptive of quality in ice cream. After December, 1905, when complainant registered the words, "The Velvet Kind," in the Patent Office as a trade-mark, the words "velvet" and "velvet kind" were very extensively so used all over the country, apparently without any knowledge of complainant's effort to appropriate the terms. This last fact is not important, as

showing such prior appropriation by any dealer or dealers as to invalidate complainant's claim to a trade-mark by reason of prior appropriation. Its significance is that it shows a common conception and understanding of the words as distinctive of quality so general, and so valuable to the trade, that they could not be appropriated as a trade-mark by one dealer to the exclusion of all others. Indeed, we cannot help thinking complainant adopted the word "velvet" as a fit adjective to describe to the public the kind of cream it was making.

[3] The allowance of the trade-mark by the Patent Office, it is true, furnishes a strong presumption of its validity. In addition to this, the Patent Office registration of the words "velvet" and its derivatives, either alone or with other words, for such articles as candies, lotions, butter, oil, and cotton fabrics, also tends to support the claim of the complainant. No doubt, in registering these words as trade-marks, the Patent Office in these instances considered the words indirectly and remotely descriptive, without being actually so, thus applying the principle on which the word "Hygeia," conveying to those who happened to think of its derivation the idea of health or healthfulness, was held a good trade-mark for water in Consolidated Ice Co. v. Hygeia Distilled Water Co., 151 Fed. 10, 80 C. C. A. 506. But none of these registrations measures up to the case cited, and none of them, as we understand, has been subjected to judicial test. We think all presumptions from the action of the Patent Office are overcome by the great weight of the evidence and the common understanding that "velvet" and "velvet kind" describe, as hardly any other words could, the desirable qualities mentioned in ice cream.

[4] The second question must also be answered in the affirmative. If the complainant had acquired the right to the exclusive use of the words, "The Velvet Kind," as a trade-mark, their use by the defendants would be itself evidence of the intention to defraud and palm off their cream as that of the complainant. Lawrence M. Co. v. Tennessee M. Co., 138 U. S. 537, 549, 11 Sup. Ct. 396, 34 L. Ed. 997. In such case the inference of fraud and unfair competition might be rebutted in exemption of damages; but, in the absence of conduct by complainant amounting to estoppel, further violation of the right of property would nevertheless be restrained. Elgin W. Co. v. Illinois W. Co., 179 U. S. 665, 674, 21 Sup. Ct. 270, 45 L. Ed. 365.

[5] Even where there is no technical trade-mark, a dealer may acquire property rights which the courts will protect, upon proof of unfair competition by imitation of his distinctive words, marks, or other designations of his goods, or of his containers or other instrumentalities of trade. The principle is thus well expressed by Judge Lurton in Computing Scale Co. v. Standard Computing Scale Co., 118 Fed. 965, 55 C. C. A. 459:

"But when the word is incapable of becoming a valid trade-mark, because descriptive or geographical, yet has by use come to stand for a particular maker or vendor, its use by another in this secondary sense will be restrained as unfair and fraudulent competition, and its use in its primary or common sense confined in such a way as will prevent a probable deceit, by enabling one maker or vendor to sell his article as the product of another." Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118;

Elgin Nat. Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 21 Sup. Ct. 270, 45 L. Ed. 365.

[6] Complainant began to make and sell ice cream in the city of Washington under the name of "The Velvet Kind" in May, 1905, and in December of that year registered the words under the federal law as a trade-mark. Doubtless believing it had a valid trade-mark, it placed the words on its containers and wagons, and by extensive advertisements in newspapers, by electric signs, and the distinctive marks on containers and wagons, the words, "The Velvet Kind," were made to signify to the trade in Washington, Richmond, and the immediate vicinity of those cities a cream of known quality made and sold in large quantities by the complainant under that name. There can be no doubt that, at least in Washington, the complainant had, by advertisement, marks, and the general conduct of its business, so associated its ice cream with the words, "The Velvet Kind," that the sale of ice cream in that city by others under that name, with nothing to distinguish their cream from complainant's, would have been a fraud.

But that did not give complainant any right to the exclusion of the use by others of the descriptive words in any place where it had not associated its cream with the designation. Hanover Star M. Co. v. Metcalf, 240 U. S. 403, 36 Sup. Ct. 357, 60 L. Ed. 713; Theodore Rectanus Co. v. United Drug Co., 226 Fed. 545, 141 C. C. A. 301. It is true that, in the cases cited, the markets in which the complainant had not established their trade in flour and drugs were much more remote geographically than is Baltimore from Washington. But ice cream is not usually transported from one large city to another, and its sale and distribution is usually within the area in proximity to the place of manufacture. Considered with respect to the usual area of sale and distribution, Baltimore is as distinct and separate market for ice cream as the Alabama market is from a city in Ohio for flour or patent medicines. Complainant had no plant in Baltimore, and has never attempted to compete for the Baltimore trade, and therefore it had no right to restrain any one from the use of the words, "The Velvet Kind," in that city.

The defendant Hendler, living in Washington, attracted by the words, "The Velvet Kind," used by complainant, some time in 1905 went into business in Baltimore, copying the words, "The Velvet Kind," and imitating in a general way the marks and colors on the containers and wagons which the complainant used. He, and the Hendler Creamery Company, his successor, built up a large business in Baltimore. Since the complainant had no appreciable trade in Baltimore, and had not made the words, "The Velvet Kind," to denote its cream, the adoption of the words there by the defendants, though an imitation, was not in itself proof of a fraud or unfair competition.

[7] Even if the words, "The Velvet Kind," had been a valid trademark under the federal statute, we should be inclined to hold that the abandonment by the complainant of its suit against the defendants in the state court in Baltimore, its full knowledge that defendants were going forward incurring expense and labor in the promotion of sales in Baltimore under the name of "The Velvet Kind," and the com-

plainant's failure to make any effort for custom there, would be sufficient evidence of estoppel or waiver to prevent a decree for profits. But the complainant might nevertheless have been entitled to an injunction against the further invasion of its right; for the defendants' appropriation of the trade-mark in that case would have been piracy.

"The intentional use of another's trade-mark is a fraud; and when the excuse is that the owner permitted such use, that excuse is disposed of by affirmative action to put a stop to it. Persistence, then, in the use is not innocent, and the wrong is a continuing one, demanding restraint by judicial interposition when properly invoked. Mere delay or acquiescence cannot defeat the remedy by injunction in support of the legal right, unless it has been continued so long and under such circumstances as to defeat the right itself, * * * nor will the issue of an injunction against the infringement of a trade-mark be denied on the ground that mere procrastination in seeking redress for depradations had deprived the true proprietor of his legal right." Menendez v. Holt, 128 U. S. 514, 9 Sup. Ct. 143, 32 L. Ed. 526; Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19, 21 Sup. Ct. 7, 45 L. Ed. 60.

[8] This is important in determining the present standing of the defendants in a court of equity; for in justice and good conscience the principle has at least a qualified application to a case of unfair competition where there is no trade-mark. Hendler received the idea of "The Velvet Kind," as a trade-mark, from the complainant. He, in common with complainant, believed that the words could be made a trade-mark, for he registered them as his trade-mark under state law. While the complainant was developing its business in Washington, Hendler took the words to Baltimore, and effectually anticipated any extension of the use of the supposed trade-mark words to the Baltimore market, which the complainant might afterwards have desired to make. Under these circumstances, equity will exact of the defendants the utmost good faith and diligence to distinguish their product from that of the complainant in the city of Annapolis or any other field of competition.

Hendler began to sell ice cream as "The Velvet Kind" to an Annapolis dealer in 1906; but his orders were small, and he did not by their extent, or by advertisement, or in any way, make the words, "The Velvet Kind," significant or of special value in the Annapolis market. In 1908, the complainant entered the Annapolis market, and by advertisement and distinctive containers and wagons made the words, "The Velvet Kind," signify to dealers a particular kind of ice cream of excellent quality made by it. Thus it built up in that market a large trade. Analysis of the somewhat conflicting testimony would not be valuable, but it leaves no doubt of the correctness of the conclusion of the District Court that in Annapolis the defendants, by adopting the words, "The Velvet Kind," made popular by complainant's efforts, and by the use of imitative containers and wagons, brought about confusion of their cream with that of the complainant, and that they profited by the confusion to complainant's loss. Especially did they avail themselves of these methods, and make them unfairly profitable, when the opportunity was furnished by complainant's increase in the price of its cream.

We think the decree of the District Court went too far in enjoining the defendants from entering territory in which the complainant

had not established a market for its cream under the designation of "The Velvet Kind."

[9] On the other hand, the decree of the District Court in another respect does not afford protection to the complainant. The defendants were enjoined from advertising and selling their cream in Annapolis and Laurel "without in immediate connection with said words 'The Velvet Kind' and in letters of the same character, style, and size, stating that their, the defendants', ice cream is not 'The Velvet Kind' made by the Chapin-Sacks Manufacturing Company of Washington, D. C." Advertisements and marks in this form, unless they contain a distinct statement of the fact that defendants' ice cream is inferior to that of the complainant, would indicate that the defendants were claiming to sell cream superior to that which the complainant was selling under the same designation.

[10] The general rule in equity is that costs are in the discretion of the trial court, and that no appeal will lie from a decree merely on the ground of error in awarding costs. But, where the decree is found to be erroneous in any other respect, the appellate court may reverse or modify the decree of the District Court with respect to costs in accordance with its own conclusions as to the equities of the case. This distinction is stated, and the numerous authorities supporting it are cited, in Gregg v. Metropolitan Trust Co., 124 Fed. 721, 732, 59 C. C. A. 637. We are so strongly impressed with the superior equities of the complainant in this case, and the necessity for the suit in order to protect its rights, that we think the entire costs should be paid by the defendants.

The decree will therefore embody these conclusions: (1) The words, "The Velvet Kind," applied to ice cream, being descriptive, are not valid as a trade-mark. (2) Advertisement and sale by the defendants of their ice cream in the city of Baltimore did not constitute unfair competition with the complainant. (3) The complainant has an established business for ice cream under the designation of "The Velvet Kind," indicated by its advertisements, its containers and wagons, in Washington, D. C., Richmond and Alexandria, Va., and Annapolis, Buckeyestown, Woodstock, and Frederick in the state of Maryland. (4) The defendants have been competing unfairly with the complainant in Annapolis and Laurel, in the state of Maryland. (5) The defendants should be enjoined from the advertisement and sale of ice cream under the designation, "The Velvet Kind," and from the use of containers, wagons, and other instrumentalities of the trade similar to those used by the complainant, in Washington, D. C., Richmond and Alexandria, Va., Annapolis, Laurel, Buckeyestown, Woodstock, and Frederick, in the state of Maryland, and all other places where the complainant has established the sale of its ice cream under the designation of "The Velvet Kind," until they shall submit to the District Court a plan of business which will satisfy the court that their cream will not be confused with that of the complainant, and will not in any wise unfairly affect complainant's business. (6) Complainant is entitled to an accounting as required by the District Court. (7) The un-

fair course of conduct pursued by the defendants requires that they pay the entire cost in the District Court and in this court.

Modified.

WADDILL, District Judge. I concur in the conclusions of the majority of the court, as stated in paragraphs 3, 4, 5, 6, and 7, and dissent from the conclusions in paragraphs 1 and 2, though I am strongly inclined to the view that the complainant, as between itself and the defendants, is not entitled to the relief prayed for, respecting the sale of its ice cream in the city of Baltimore, because of laches in the prosecution of its suit, if, in fact, it was not estopped by the dismissal of the suit instituted in the state court at Baltimore against the defendants to prevent them from infringing the complainant's trademark, and unfairly competing with it in its ice cream business; said defendants having duly appeared in said cause.