**KAWNEER CO. v. McHUGH et al.**
No. 543.

District Court, M. D. Pennsylvania.
Aug. 15, 1931.

Ralph M. Snyder and James R. McKnight (of Parkinson & Lane), both of Chicago, Ill., and S. A. Davis and T. L. Hoban, both of Scranton, Pa., for plaintiff.

Rudolph J. Magagna and Albert W. Johnson, Jr., both of Wilkes Barre, Pa., and George P. Kimmel, of Washington, D. C., for defendants.

WATSON, District Judge.

This is a suit in equity. The plaintiff charges against the defendants infringement of patent No. 1,157,900 to Plym of October 26, 1915, and unfair competition.

The defendants deny the validity of the patent, deny that they are guilty of infringement, and deny all charges of unfair competition.

The patent in suit is a metallic structure for holding glass in position for show windows, or for any similar purpose. The title to the patent in the plaintiff was admitted. The objects to be attained by this structure are several. Glass expands and contracts when subjected to different temperature, and it is necessary that the holding yield sufficiently so that it will not break the glass when it expands, and not hold the glass too loosely when it contracts. The glass varies in thickness and is subject to pressure by currents of air, and is liable to be subjected to other pressures. These pressures may be exerted from the inside or the outside. It is, therefore, desirable that the glass be held with sufficient rigidity to resist these pressures, and at the same time in a manner, sufficiently yielding on both sides so that it will not break at the holding point. There should be a resilient gripping of the glass on both sides. Inventive genius had sufficiently developed many years ago so that the holding of glass was accomplished by substantially three elements: A rest to support the glass at its bottom; a gutter supporting the glass at the back or inner side; and a brace holding it at its front or outer side. The plaintiff's patent in suit contemplates the use of these three elements, but, in my opinion, the elements are different in some respects from those of earlier patents.

Figure 1 of the patent drawings of the patent in suit (here produced) shows in vertical section the inventor's preferred type of construction.

## 1,157,900.

Referring to the specifications: "1 indicates a window sill, and 2 an angle-bracket secured to the sill by screws 3. 4 is an angle-plate resting on the sill and against the upwardly-projecting arm of the angle-bracket and equipped at its upper end with a V-shaped apertured resilient gutter 5. 6 indicates a molding strip bearing at one edge against the sill and the outer edge of the angle-plate 4. 7 are screw bolts (only one appearing) connected to the molding strip 6 and angle-bracket 2 and engaged at their inner ends by nuts 8. 9 is a continuous or sectional inverted U-shaped channel bar fitting upon the base portions of plates 4 and against the vertical arms of said plates and spaced from the adjacent edge of the glass plate 10 clamped between the resilient apertured gutter 5 and the adjacent edge of the molding strip 6, the bolts 7 extending through the channel plate, it being noticed that the bridge portion of the channel bar is interposed between the bolts and plate 10 and thus guards against any possibility of the latter coming in contact with the bolts. 11 indicates an angle-plate secured to the vertical arm of base-plate 4 and upon the bridge portion of the channel bar and equipped with leather or equivalent compressible strips 12 forming seats for the window glass and spacing the same from the angle-plate 11 to permit air to circulate around the window glass and through the apertures of the gutter and the

apertures 13 (only one appearing) in the molding strip."

The specifications in describing figure 8 refer to the upper edges of the outer member and inner member terminating in resilient flanges for engagement with opposite faces of the window glass.

The claims in suit are Nos. 4, 5, 8, and 11, and read as follows:

"4. In a setting for plate glass, the combination with a support of an inner and an outer sheet metal member, the inner member having a gutter to form the glass engaging portion thereof, said inner and outer members being both free to move toward the glass, and means for drawing both of said members toward the glass and together whereby the glass is resiliently gripped between the two members.

"5. In a setting for plate glass, the combination with a support of an inner and an outer sheet metal member, the inner member having a gutter to form the glass engaging portion thereof, said inner and outer members being both free to move toward the glass, a plurality of parts underlying and supporting the glass, and means for drawing both of said members toward the glass and together whereby the glass is resiliently gripped between the two members."

"8. In a window construction, the combination with an inner and outer sheet metal member adapted to engage the opposite sides of a pane of glass, of an inverted U-shaped member intermediate of said sheet metal members, fastening means for connecting said members together, and the pane of glass adapted to rest upon the said U-shaped member."

"11. In a setting for plate glass, a support, a pair of yielding clamping members mounted on said support, said clamping members being each free to move toward the glass, and means for drawing them together toward the glass, drainage and ventilating openings in said clamping members for conveying moisture and air through said setting."

The advantages claimed for the device of the patent are that it is a device for mounting heavy glass plates in store fronts and the like, capable of resiliently gripping and properly holding in place under varying conditions and strains plate glass of various sizes from 8 to 10 feet in length and 10 to 12 feet wide weighing many hundred pounds. By providing for resilient gripping of the glass on both sides, the inventor provides a means by which the glass is securely gripped at all

times and throughout its length despite variation in thickness of the glass, settling vibration set up by high wind pressure, and other conditions. The entering of moisture between the upper edge of the outer member and the glass is prevented.

I have stated that in my opinion the elements in the patent in suit are different from those of earlier patents. The gutter members, or inner members, are not different. They are resilient and function in the same way, but the principal difference, and to my mind one that is controlling, is the difference in the outer member. The outer member in the patent in suit, while it may look somewhat like the outer member in the earlier patents, is quite different in function, because the outer member is not shaped to evade contact with the shelf, as there is no shelf to evade, and the shape is such that it is much more flexible and resilient. The purpose of the form or shape being to produce a resilient gripping means whereby a glass is gripped on both sides resiliently. The most that can be said for any of the prior patents is that the outer member was rigid, or of a soft metal which would adapt itself to the contour of the glass, but not resilient in intent or in claim. In the patent in suit, we find an outside resilient member which shows a double gripping action, which has apparently solved the problem of holding glass against double movement. Glass does not always move in one direction. There is another element which is also different from that found in any prior patent, and that is the structure underlying the glass which is an inverted sectional U-shaped resilient channel bar; whereas, in the prior patents, the support was a rigid shelf.

As I understand the prior art and the earlier patents, Plym was the first to make use of yielding and resilient outer and inner members, so that, by the pressure from the outside or pressure from the inside, the glass is so firmly held as to keep it in place, and, at the same time, yield sufficiently whenever the strain is exerted so that the glass will not break at the edge near the holding points, and will not permit a separation between the upper edge of the outer member and the glass for the entering of moisture. Out of the invention a new combination and useful structure seems to have been created, and one that is of real benefit and assistance to the public generally, and is now in general use.

The change of the outer member from a rigid one to a resilient one was an important step in the development of the art, and, together with the combination of elements of plaintiff's device, goes beyond what would be mechanical skill. It rises beyond mechanical skill to have made the outer member of such form, material, and structure as would be yielding and resilient and so combined with the other elements as to produce the desired results.

The validity of the patent in suit is challenged as not involving invention, in view of the prior art including earlier issued patents to Plym. A number of patents were introduced, but those finally relied upon as denying invention are: Plym, No. 846,343, 1907; Plym, No. 852,450, 1907; Plym, No. 879,898, 1908. For the purpose of convenience, I shall refer to these patents as first, second, and third, in the order named. Neither of these patents describes the outside resilient member, which is an important feature of the combination of the claim in suit. In the first patent, the outside member is rigid and forms a shelf for the glass. In the second patent, the outside member is a rigid, nonresilient member, and the shelf is another rigid member fastened to the back member. In the third patent, the shelf is a rigid member fastened to the back member, and the outside member is a plate or molding piece of copper, or equivalent metal, shaped so as to evade the shelf, of a yielding metal not resilient. Neither of these three patents discloses the resilient outside member, which is present in the patent in suit where the glass is resiliently gripped between the outer member and the inner member. The resilient gutter on the inside, which is free to expand like a bellows, and the cantilever section on the outside, is also free to move toward the glass, so that both move toward the glass, regardless of the fact that each is fixed to a base which does not move. Nor do we find in the first, second, or third patents the U-shaped resilient member under the glass.

The patent in suit received the approval of the Patent Office after it was considered by that office for over six years, and is presumptively valid. The authorities hold that, to overcome this presumption, the burden is upon him who asserts it, and every reasonable doubt should be resolved against him. The evidence must be full, unequivocal, and convincing. Diamond Rubber Company v. Consolidated Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527; Ward Baking Co. v. Hazleton Baking Co. (D. C.) 292 F. 202; Window Glass Machine Co. v. Smethport Window Glass Co. (D. C.) 266 F. 85; Unit-

ed Shirt & Collar Co. et al. v. Beattie et al. (C. C.) 138 F. 136.

It is contended by defendants that the elements in the patent in suit are all old, and that for that reason the patent is not valid. I cannot agree with the contention that all of the elements are old. It is well settled that a patent combination may contain old elements, or that all the elements may be old providing a new result is accomplished. United Verde Copper Co. v. Peirce-Smith Converter Co. (C. C. A.) 7 F.(2d) 13; The Barbed Wire Patent, 143 U. S. 275, 12 S. Ct. 443, 36 L. Ed. 154; Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527.

I find plaintiff's patent valid, and, in reaching my conclusion, I have considered all the evidence in the case, including the evidence produced July 24, 1930, on motion of the plaintiff.

The question of infringement is to my mind not so difficult as the question of validity. The alleged infringing structure is manufactured by the defendants, and marketed and installed by the defendants in connection with their store front business. The structure in question responds to the claims in suit. It performs the primary function of the patent in suit in practically the same way. The two structures are alike in their functions, combinations, and elements. In Hobbs v. Beach, 180 U. S. 383, 21 S. Ct. 409, 416, 45 L. Ed. 586, the Supreme Court said: "We are not concerned with the subordinate differences in the mechanism. * * * As the two machines are alike in their functions, combination, and elements, it is unnecessary to go further and inquire whether they are alike or unlike in their details."

I hold that the defendants' structure infringes the claims in suit of patent No. 1,157,900.

The only remaining branch of the case to be disposed of is that of unfair competition. The record shows that plaintiff's manufacture of sash rails and other parts of store fronts were received with great favor by the trade, and established a high reputation.

Plaintiff charges principally that defendants have copied plaintiff's products in essential and nonessential details; that they sold them at a materially reduced price; that they palmed off their products as and for those of plaintiff; that defendants' copies so closely resembled the plaintiff's in design and appearance and non-functional details as to cause the public to constantly mistake the de-

fendants' for plaintiff's, and purchased defendants', believing they had obtained plaintiff's; and that defendants copied plaintiff's catalogues and other literature, which showed plaintiff's product and other data.

The sash rail is a minor part of the whole structure, which includes many other unpatented features. The plaintiff seeks relief for alleged unfair competition on account of the store front construction taken as a whole. In Detroit Showcase Co. v. Kawneer Mfg. Co., 250 F. 234, the Circuit Court of Appeals, Sixth Circuit, because of lack of jurisdiction in that case as to the many other unpatented features, considered only the sash rail construction of patent No. 852,450 independently, and not as a part of a complete window front construction, and found an absence of unfair competition.

There was much testimony taken in connection with the charge of unfair competition. I have considered carefully all of the evidence. There is in defendants' product a similarity in form, dimensions, and general appearance, which I feel was the result of effort to comply with the physical requirements essential to commercial success and not designed to misrepresent the origin of the articles. It is to be observed that it is reasonable to expect closer attention on the part of a purchaser, to store front constructions than to padlocks. Nowhere in the catalogue or other literature of the defendants is there disclosed anything intended or calculated to deceive or create confusion in the minds of the purchasing public as to the origin or ownership of the store front construction. On the contrary, distinguishing words, such as "Kingston Store Front System," are so used as to prevent the deception or misunderstanding. It does not appear from the evidence that there was any case where a person desiring to purchase the plaintiff's store front construction was misled by the appearance of the defendants' store front construction, so that he believed the defendants' was that of plaintiff's. There is no evidence that the defendants sold their product at a material reduction in price, nor at any reduction in price, but there is evidence that defendants sold their product at a price higher than plaintiff sold its product. The evidence shows that the defendants' name plate was placed upon the Robinson store by the owner of the store and not by the defendants, or with the knowledge or consent of the defendants. I find as a fact that the defendants never deceived any one that purchased their store front construction, and that every one who

has purchased defendants' store front construction has known that he was purchasing defendants' product. "'Unfair competition is not established by proof of similarity in form, dimension, or general appearance alone. When such similarity consists in constructions common to, or characteristic of, the articles in question, and especially when it appears to result from an effort to comply with the physical requirements essential to commercial success, and not to be designed to misrepresent the origin of such articles, the doctrine of unfair competition cannot be successfully invoked to abridge the freedom of trade competition.'" J. A. Scriven Co. v. Morris (C. C.) 154 F. 914, 918 (quoting and adopting the definition in Marvel Co. v. Pearl, 133 F. 160, 162, 66 C. C. A. 226, 227). The test of unfair competition is whether the maker or seller of the goods is, by his conduct, passing off his goods as the complainant's goods, and not whether the public is likely to be deceived as to who is the maker or seller of the goods. Borden Ice Cream Co. v. Borden's Condensed Milk Co. (C. C. A.) 201 F. 510. "The essence of the wrong in unfair competition is that the defendants are palming off their goods as the merchandise of another. If the defendants so conduct their business as not to palm off their goods as those of the plaintiff, the suit falls. Charles Broadway Rouss, Inc., v. Winchester Co. (C. C. A.) 300 F. 706; Auto Light Co. v. Prest-O-Lite Co. (C. C. A.) 264 F. 810." Turner & Seymour Mfg. Co. v. A. & J. Mfg. Co. (C. C. A.) 20 F.(2d) 298, 301. "The cardinal rule is that nothing else than conduct tending to pass off one man's merchandise or business as that of another, will constitute unfair competition. Rathbone v. Champion Steel Range Co., 189 F. 26, 110 C. C. A. 596, 37 L. R. A. (N. S.) 258; American Washboard Co. v. Saginaw Mfg. Co., 103 F. 281, 43 C. C. A. 233, 50 L. R. A. 609; Hanover Milling Co. v. Metcalf, 240 U. S. 403, 36 S. Ct. 357, 60 L. Ed. 713; Hendler Creamery Co. v. Chapin-Sacks Mfg. Co., 254 F. 553, 166 C. C. A. 111." Autoline Oil Co. v. Indian Refining Co. (D. C.) 3 F.(2d) 457, 464.

In a case like this, where a plaintiff stands upon ground outside the scope of his patent, and seeks relief for unfair competition in trade, he prevails, if he prevails at all, under the general doctrine of equity. "And where an injunction is sought which would operate as restraint in the mercantile field, it is a principle of equity, based upon considerations of caution, that to justify an injunction the case must be unmistakably clear and beyond question." Marshall Field & Co. v. George S. Kelley Co. (C. C. A.) 233 F. 265, 266.

I do not think that plaintiff's case meets these requirements of equity,—and a case of unfair competition is not made.

So much of the bill as relates to unfair competition is dismissed. A decree will be entered in favor of the plaintiff for such profits and damages as plaintiff is entitled to for the infringement, and reference will be made to a master to take an accounting as to the damages and profits, and a permanent injunction will issue restraining the defendant from infringing the patent.