BATTLE & Co. *v.* FINLAY *et al.* ·

(*Circuit Court, E. D. Louisiana.* April 2, 1891.)

TRADE-MARK—INFRINGEMENT—EVIDENCE.

In a suit for infringing a trade-mark, it appeared that for many years plaintiff had manufactured and sold a chemical preparation for medicinal purposes under the name of "Bromidia," a word coined for and arbitrarily applied to the preparation, and that in 1881 it had registered that word as a trade-mark in the patent office; that defendants subsequently manufactured and sold a similar compound, intended for the same uses, which they labeled, "Compound Elixir Chloral & Bromide of Potassium," underneath which, in large letters, the most prominent and conspicuous word on the label is the word "Bromidia," while below, in smaller type, though distinct and of good size, is a statement that it is prepared by defendants. *Held* an infringement of the trade-mark, by which incautious purchasers are likely to be deceived, and that an injunction *pendente lite* must be granted.

In Equity.    Motion for preliminary injunction.
*R. S. McDonald,* for complainants.
*B. R. Forman,* for defendants.

PARDEE, J.    On this preliminary hearing the case shows that the complainants and their assignors, from about 1877, adopted for their use as a trade-mark, (for a chemical or medicinal preparation manufactured by them under an alleged private formula, composed of chloral hydrate, bromide of potassium, extract of cannabis indica, and extract of hyoscyamus,) the word "Bromidia," a word coined for and arbitrarily applied to the preparation aforesaid; that thereafter they manufactured this said preparation, put it in the market with the said label, "Bromidia," and built up and established a business in the manufacture of said preparation, putting it for sale on the market in packages marked with and designated by the said trade-mark, so that the same became known throughout the trade and to the public, and became and is valuable to the complainants; and that in 1881, under the law of the United States entitled "An act to authorize the registration of trade-marks, and to protect the same," said trade-mark was duly registered in the patent-office; that the defendants are engaged in the manufacture of a chemical or medicinal preparation of the same component parts as the complainants' article, substantially the same, and used for the same purposes, which they label "Compound Elixir Chloral & Bromide of Potassium," underneath which, in larger letters, and as the most prominent and conspicuous mark on the label, appears the word "Bromidia," and at the bottom of the label, in letters decidedly smaller, though of good size and distinct, the words, "Prepared by Finlay & Brunswig, Manufacturing Chemists, New Orleans;" and that the defendants in their trade, when called upon for "Bromidia," either by written or verbal order, supply the article of their own preparation labeled as above.    The defendants, in their answer, admitting the manufacture of the preparation aforesaid since January 1, 1888, assert that the word "Bromidia," used by them, indicates that the chief component part of the preparation is bromide, and does not in any way indicate the origin of the preparation, nor the persons by whom it is man-

ufactured or put up or offered for sale, but indicates solely the fact that its principal ingredient is bromide of potassium, commonly called "bromide;" and again, that they had put upon their said label in quotation marks the word "Bromidia" to indicate the chief component part of the said preparation, and in order that the purchasers might know that their compound elixir of chloral and bromide of potassium was substantially the same, and used for the same purpose, producing the same medicinal effects, and possessing substantially the same component parts as "Bromidia," and that their compound elixir of chloral and bromide of potassium was substantially the same thing as "Bromidia," and for no other purpose. And they assert, further, that—

"On each and every one of their labels was printed in large letters, 'Prepared by Finlay & Brunswig,' which would render it impossible that the quoting of the word 'Bromidia' on the label would lead any one to suppose or to infer that the preparation manufactured and sold by defendants in any way emanated from, or was manufactured by, or originated with the complainants."

There can be no question in this case but that the complainants have a right to and a property in the word "Bromidia" as a trade-mark, and that the defendants are infringing upon the same. The word is an arbitrary word, descriptive of nothing, unless it is of the complainants' goods, and that only for the reason that the complainants have introduced them to the public under such arbitrary name. The defendants are confessedly using it for the purpose of informing and satisfying the public that their preparation, "Compound Elixir Chloral & Bromide of Potassium," is the same in substance, quality, and effect as the complainants' "Bromidia." "Chancery protects trade-marks upon the ground that a party shall not be permitted to sell his own goods as the goods of another; and therefore he will not be allowed to use the names, marks, letters, or other *indicia* of another, by which he may pass off his own goods to purchasers as the manufacture of another." *McLean* v. *Fleming*, 96 U. S. 245. "A court of equity will enjoin unlawful competition in trade by means of a simulated label, or of the appropriation of a name; as where the defendant appropriates the name of an hotel conducted by the plaintiff, or imitates his label upon preparations." *Burton* v. *Stratton*, 12 Fed. Rep. 696, and cases there cited.

The question, then, for decision in this case seems to be whether the defendants, in their use of the word "Bromidia," are in any way intending to or likely to deceive the purchasing public, so as to be enabled to pass off their own goods to supply a demand for the goods of complainants. Unless their object is to get some advantage from the use of the word "Bromidia," it is very difficult to see why they should use it. As they admit that they use it for the purpose of informing purchasers that their preparation is substantially the same as "Bromidia," they practically admit that by such use they are attempting to supply a demand for complainants' goods, and that through the use of complainants' trademark. For this they seek to justify by saying that as on their labels is

printed in large letters the words, "Prepared by Finlay & Brunswig, Manufacturing Chemists," no one can be deceived. In the case of *Roberts* v. *Sheldon*, 8 Biss. 398, which seems to be a case very similar to this, the court says:

"In regard to the last point made,—that by reason of the defendants using their own name upon the wrapper or envelope, the public are not deceived,— it would perhaps be enough to say that, when goods acquire a specific name, the purchaser rarely looks to see who has manufactured the goods by that name. As, for instance, if, as a matter of fact, these needles have acquired among the trade, and among consumers or users, the designation of 'Parabola' to such an extent that the purchaser would simply ask for 'Parabola needles,' he might be supplied with the 'Parabola' needles manufactured by Clarke & Sons, instead of those manufactured by complainant, to the direct injury of the complainant and the abridging of his trade."

And the court held that there was a liability to impose upon the trade and the public, from which the complainant had a right to be protected. Many cases might be cited to show that the infringement of a trade-mark cannot be justified on the ground that it is accompanied by marks and advertisements showing that the goods so marked are manufactured by other parties, the true test being (1) whether the trade-mark is infringed; and (2) whether incautious purchasers may be deceived. Wherever it appears that an incautious or ordinarily unsuspecting purchaser is liable to be deceived by the wrongful use of the trade-mark, equity never fails to give a remedy. In the instant case it seems to be clear that the defendants are appropriating complainants' property without their consent, and to their damage. In my opinion the injunction *pendente lite* prayed for should issue, and it is so ordered.