### N. K. FAIRBANK CO. v. CENTRAL LARD CO.

(Circuit Court, S. D. New York. October, 1894.)

1. TRADE-MARK—DESCRIPTIVE NAME—"COTTOLENE."
   The word "Cottolene," designating a substitute for lard composed of cotton-seed oil and the product of beef fat. is not so descriptive of the substance and quality of its component parts that it cannot be used as a trade-mark.

2. SAME—INFRINGEMENT.
   The use of the word "Cottoleo" on the tierces and tubs containing a compound of cotton-seed oil and the product of beef fat is an infringement of the trade-mark "Cottolene" previously registered for the sale of the same substance, and used in marking tierces and tubs.

3. SAME.
   It is no defense to a suit for infringement of the trade-mark "Cottolene" by the use of the word "Cottoleo" that defendant sold under his own name, and made no attempt, other than by use of the word "Cottoleo," to sell his goods as if manufactured by plaintiff.

In Equity. Bill by the N. K. Fairbank Company against the Central Lard Company for an injunction to restrain the infringement of a trade-mark. Granted.

Sullivan & Cromwell and Rowland Cox, for complainant.

A. E. Blackmar, for defendant.

TOWNSEND, District Judge. This is a bill in equity for an injunction against the infringement of the complainant's trade-mark "Cottolene" by the use of the word "Cottoleo." The complainant began the manufacture of the article, and devised and registered the word "Cottolene" as a trade-mark in 1887. It obtained a large and increasing business. In May, 1892, its sales amounted to 1,000,000 pounds a month. Cottolene is a substitute for lard. It is composed of cotton-seed oil and the product of beef fat. Beef fat or suet, under heat and pressure, yields two products, oleostearine and oleomargarine. The former is a solid, and is used in making a substitute for lard. The latter is more nearly a liquid, and is used in making a substitute for butter. The word "oleo" is used when colloquially among merchants to indicate either oleomargarine or oleostearine. At the time when defendant, in 1892, commenced the manufacture of cottoleo, which is identical in composition, character, and appearance with cottolene, other articles made of the same ingredients were on sale in the market under various names other than "Cottolene," such as "Lardine," "Cotton-Oil Lard," "Panteleia," "Golden Beef Drippings," "Beef Frying Fat," etc. These facts were known to the defendant. The compound in question was well known, and defendant had a right to manufacture and sell it. Defendant sold under its own trade-name, and, except in the use of the word "Cottoleo," stenciled on tierces and tubs, did not simulate the labels or packages used by complainant. This article, however, is frequently sold in tierces to bakers, and in tubs to grocers, who sell it to customers from such tubs by the pound; so that the customer does not necessarily see the package at all. It seems clear that "Cottolene" is a proper and valid trade-mark. Although it may suggest cotton-seed oil, it is not sufficiently descriptive to render it invalid as a trade-mark under the recent decisions. The rule that names suggestive of the nature or composition of articles may be valid trade-marks if not too accurately descriptive of their character or quality has been applied in Burnett v. Phalon, 9 Bosw. 192, to the use of the word "Cocoaine;" in Manufacturing Co. v. Ludeling, 22 Fed. 823, to "Maizena;" in Leonard v. Lubricator, 38 Fed. 922, to "Valvoline;" in Battle v. Finlay, 45 Fed. 796, to "Bromidia." A more recent case is Keasbey v. Chemical Works, 37 N. E. 476, decided by the court of appeals in New York since the argument of this case. The trade-mark in question in that case is "Bromo Caffeine." This was held to be a valid trade-mark in the supreme court, which decision was overruled by the general term, and cited by the defendant in support of its contention that "Cottoleo" was a descriptive word. This article, called "Bromo Caffeine," made by the plaintiff in that case, was found to contain caffeine, bromide of potassium, and other substances. The opinion

in the appellate court says that bromide "might refer to bromide of potassium, or bromide of sodium, or to any other bromide, or to bromine," and thus stated its conclusions:

"We think this case comes within the doctrine of those cases which have protected the words of the trade-mark, although they suggested more or less the composition, quality, or characteristics of the article."

It also seems clear that the word "Cottoleo" is sufficiently similar to "Cottolene" to infringe it. When the printed word, as well as the sound, is considered, the resemblance is as great as that of "Cellonite" to "Celluloid" (Celluloid Manuf'g Co. v. Cellonite Manuf'g Co., 32 Fed. 94); "Wamyesta" to "Wamsutta" (Wamsutta Mills v. Allen, Cox, Man. Trade-Mark Cas. 660); "Maizharina" to "Maizena" (Manufacturing Co. v. Ludeling, 22 Fed. 823); "Saponiti" to "Sapolio" (Enoch Morgan's Sons Co. v. Wendover, Cox, Man. Trade-Mark Cas. 713). See, also, Estes v. Leslie, 29 Fed. 91, in which "Chatterbook" was held to infringe "Chatterbox."

Defendant's counsel does not seem to seriously controvert these propositions. His defense is novel and ingenious. He says that complainant can have no better case here than he would have if his trade-mark had been "Cottoleo," and the defendant had used the same word; and he maintains that "Cottoleo" is so far a descriptive word that it cannot be used as a trade-mark. He says:

"If such an alleged trade-mark would not have prevented the defendant from using the same word, certainly a trade-mark claimed in any other word cannot prevent the defendant from using it."

He says that, as this was a new compound when complainant began to manufacture it, they could not, by their choice of a name adopted as a trade-mark, restrict any parties thereafter manufacturing in their choice of descriptive words. He says that defendant was justified in using a word which was euphonious, and which indicated the ingredients of which the product was composed, and that no trade-mark claimed or owned by the complainant can abridge that right.

The questions, as stated by defendant, then are: First. Is "Cottoleo" so far a descriptive word that it could not be used as a trade-mark? Second. Where a manufacturer originating a new compound has given it a name suggestive of some of the ingredients, but a valid trade-mark, may a later manufacturer adopt a name similar in appearance and sound, provided the same is so far descriptive of the article that it would not be valid as a trade-mark? Defendant's counsel, in support of his contention that "Cottoleo" is a descriptive word, quotes the following, among others, as having been held descriptive, and therefore invalid as trade-marks: "Cherry Pectoral" (Ayer v. Rushton, 7 Daly, 9); "Taffe Tulu" (Colgan v. Danheiser, 35 Fed. 150); "Rye & Rock" (Van Beil v. Prescott, 46 N. Y. Super. Ct. 542); "Straight Cut" (Ginter v. Tobacco Co., 12 Fed. 782); "Macassar" (Rowland v. Breidenbach, 1 Cox, Man. Trade-Mark Cas. 386); "Creaylic Ointment" (Soap Co. v. Thompson, 25 Fed. 625); "Iron Bitters" (Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625); figures "$\frac{1}{2}$" on cigarettes composed of two

kinds of tobacco (Kinney v. Allen, 1 Hughes, 106, Fed. Cas. No. 7,826). But in these cases and the others cited by defendant the words claimed as trade-marks were either originally descriptive, or had become incorporated into the English language so as to be recognized as descriptive of the article, and therefore incapable of exclusive appropriation.

The evidence shows that the word "Cottoleo" is not formed in accordance with any established rules for the formation of a new word. "Cott" is merely suggestive of cotton oil. It does not describe it, and "oleo" may describe or refer to oleomargarine as well as to oleostearine, or to other oils. "Oleo" is ordinarily used as a prefix, and not a suffix; and it is shown to be the rule in coining compound words that the name of the more important article is placed last. There were various other words in common use describing the product when the defendant coined the word. It does not, therefore, come within the principle of those cases where there is only a single name to designate the new article, or where the new name is used merely as descriptive of the article. Defendant's theory that, where a suggestive trade-mark has been adopted, another desiring to obtain the benefit of the trade-mark may coin a word not already in the language, and not made according to the regular rules for coining new words, yet sufficiently indicative of the quality and character of the article to be invalid as a trade-mark, and sufficiently like the trade-mark in use to obtain the benefit of an infringement, seems to open the door for ingenious fraud. Under the circumstances of this case, the conduct of the defendant in rejecting all existing names, and in coining a new name, which conveys to the eye and ear so close an imitation of complainant's trade-mark seems to indicate a design to impose his article upon the public as that of the complainant, or, at least, to obtain the substantial benefit of complainant's trade-mark. It is well settled that the inventor of an arbitrary or fanciful name may apply it to an article manufactured by him to distinguish his manufacture from that of others, and that the subsequent use of such word by the public to denote the article does not deprive the originator of such word of his exclusive right to its use. Selchow v. Baker, 93 N. Y. 59; Ausable Horse-Nail Co. v. Essex Horse-Nail Co., 32 Fed. 94; Manufacturing Co. v. Read, 47 Fed. 712. Neither does the fact that the defendant sold under its own name, and made no attempt, other than by the use of the word "Cottoleo," to palm off his goods as those of the complainant, constitute a defense. Roberts v. Sheldon, 18 O. G. 1277, Fed. Cas. No. 11,916, and cases there quoted; Sawyer v. Horn, 1 Fed. 24; Hier v. Abrahams, 82 N. Y. 519; Battle v. Finlay, 45 Fed. 796. It seems to be the law that, when manufacturers have educated the public to ask for a certain article by its trade-mark name, they have acquired the right to insist that products manufactured by others shall not be given to the public under that name. It is just that it should be so, for the benefit derived from such name can only be obtained by faithful service in furnishing articles of recognized value. Moreover, if the trade-mark name might be adopted by others, inferior articles might then be

produced and sold under it; and thereby the value to manufacturers of the reputation of the name used by them as a trade-mark would be destroyed.

There will be the usual decree for an injunction and an accounting.