### AMERICAN GROCERY CO. v. SLOAN et al.

(Circuit Court, S. D. New York. May 27, 1895.)

1. TRADE-MARKS—DESCRIPTIVE NAME.
    The word "Momaja," as applied to a blend of Mocha, Maracaibo, and Java coffees, is not so far descriptive as to be objectionable as a trade-mark.

2. SAME—INFRINGEMENT—"MOMAJA" AND "MOJAVA."
    A trade-mark consisting of the word "Momaja," as applied to a blend of coffee, is infringed by the use of the word "Mojava," applied to another blend of coffee.

This was a suit by the American Grocery Company against Bennett Sloan & Company to restrain the infringement of plaintiff's trade-mark. Complainant moved for a preliminary injunction. Granted.

J. C. Clayton, for complainant.
Wise & Lichtenstein, for defendants.

LACOMBE, Circuit Judge. In the year 1884, the firm of Thurber, Whyland & Co. devised and adopted a trade-mark for a blend of roasted coffee. The name thus adopted was "Momaja." This name is suggestive of a composition of Mocha, Maracaibo, and Java coffees, but certainly is not sufficiently descriptive to invalidate it as a trade-mark, under the decisions. See the "Cottolene" case (N. K. Fairbank Co. v. Central Land Co., 64 Fed. 133), and cases

there cited, sustaining "Maizena," "Cocoaine," "Valvoline," "Bromidia," and "Bromo-Caffeine." The brand was at once put on the market, was extensively advertised and largely sold, and became well known to the trade. In 1891 the right to this trade-mark passed to a corporation known as the "Thurber-Whyland Co." That corporation passed into the hands of receivers in 1893, and on June 30, 1894, the complainant duly obtained the trade-mark "Momaja" by purchase. From the time it was first adopted it has been in use, and sales of coffee under it have been made by the successive holders of the title.

The defendants, who are charged with infringement, are engaged in business as grocers in this city. Their western agent in Chicago, one Charles H. Smith, was for many years subsequent to the adoption of the "Momaja" trade-mark in the employ of Thurber, Whyland & Co., and of the corporation of the same name. Defendants make a blend of coffee, and wishing, as they say, to give their product a distinctive character, they devised a trade-mark about a year ago, under which they have since been offering their coffee for sale. The answer and affidavits submitted by defendants deny any intent to simulate or infringe complainant's trade-mark, "Momaja," which was well known to defendants. On the contrary, the defendants' affidavits, with great unanimity, assert that, at the time they undertook to devise their trade-mark, coffee sold under complainant's mark had deteriorated, and had obtained less and less favor in the market; that complainant's brand had no value; that the title "Momaja" was rather a drawback and detriment, hindering, and not assisting, the sale of coffee; that because "Momaja" had become so unpopular and unsalable they intended to strictly differentiate in the selection of their own title, for, as the affidavits assert, "it would have been the poorest business policy, without considering the question of good morals or ethics, to have attempted to work up a new brand successfully upon the fading reputation of the 'Momaja.'" The great object sought to be secured in the selection of defendants' trade-mark, as suggested on the argument, was "to get away as far as possible from 'Momaja.'" The result of defendants' efforts in that direction is somewhat startling. They selected the word "Mojava." Certainly they did not get very far away; in fact, from the point of view of a court of equity it looks much less like a departure than it does like an approach, and it may well be apprehended that if defendants continue to use the word "Mojava" they run considerable risk of confusion with the unpopular and unsalable brand from which they wanted "strictly to differentiate" their own title. In the light of decisions which find infringing resemblances between "Cottoleo" and "Cottolene," between "Cellonite" and "Celluloid," between "Wamyesta" and "Wamsutta," between "Maizharina" and "Maizena," between "Saponite" and "Sapolio" (see citations in 64 Fed. 135), there is little difficulty in disposing of this case. In the period of rest and quiet which will be secured by a temporary injunction, possibly defendants may renew their strength sufficiently to be able to get further away from "Momaja" the next time they try "to strictly differ-

entiate" their own goods. The case of Medicine Co. v. Wood, 108 U. S. 218, 2 Sup. Ct. 436, has no application to the facts of this case. No misrepresentation as to who is the manufacturer of complainant's coffee, nor as to where it is manufactured, is shown. The letters of Thurber referred to in defendants' affidavits are immaterial. They were written after the title to the trade-mark passed from the concerns in which he was interested.

Motion for injunction pendente lite is granted