W. G. REARDON LABORATORIES, Inc.,
v. B. & B. EXTERMINATORS, Inc.,
et al.
No. 3597.

Circuit Court of Appeals, Fourth Circuit.
June 11, 1934.

Charles H. Howson, of Philadelphia, Pa. (Howson & Howson, of Philadelphia, Pa., Hubert Howson, of New York City, Thomas W. Y. Clark, of Baltimore, Md., and Margaret Wagner Smith, of New York City, on the brief), for appellant.

Robert E. Kanode, of Baltimore, Md., for appellees.

Before NORTHCOTT and SOPER, Circuit Judges, and MEEKINS, District Judge.

## NORTHCOTT, Circuit Judge.

This is an appeal from a decree of the District Court of the United States for the District of Maryland. The appellant (hereinafter referred to as the plaintiff) brought this suit against the appellees (hereinafter referred to as the defendants) and in its bill of complaint alleged that it was the owner of the common-law and registered trade-marks "Mouse Seed" ("Mouseed") and "Rat Seed" ("Ratceed"), and charged that the defendants had infringed said trade-marks and had been guilty of unfair competition in using container packages similar to those used by the plaintiff in marketing its product, a rodent exterminator. Plaintiff is a citizen of New York and the defendants are citizens of Maryland. The defendants answered the complaint, alleging that the expressions "Mouse Seed" and "Rat Seed" are descriptive, and that plaintiff and its predecessors were not entitled to have and had not had exclusive use of said expressions as trade-marks.

After a hearing the court below held that the words "Mouse Seed" or "Rat Seed" were descriptive and could not be appropriated at common law as valid trade-marks and that the plaintiff was not entitled to an injunction prohibiting any infringement in the use of said words. The court held, however, that certain packages used by the defendants were competitively unfair and that the plaintiff was entitled to an injunction against further unfair competition in the use of said packages. The court also held that the plaintiff had not made such a case as entitled it to damages or an accounting either for infringement or unfair competition and entered a decree in accordance with the opinion. From this action this appeal was brought.

The trade-mark "Mouse Seed" was adopted about the year 1903, by one William R. Green, a druggist of Providence, R. I., and was used as a mark for the sale of a product which he was then making and selling which consisted of poisoned grain for the extermination of rodents. Green sold this business of making the exterminator together with the trade-mark "Mouse Seed" to E. Burke, who engaged in the business. One of Burke's customers was H. C. Hagedorn, Jr., then of Brooklyn, N. Y., who sold the product to various customers. After Hagedorn had sold the Burke product for about three years he purchased, from Burke, the entire business of making and selling the exterminator together with the trade-mark "Mouse Seed." This purchase took place in January, 1923.

In 1925, W. G. Reardon, president of the plaintiff corporation, opened negotiations with Hagedorn for the purchase of the business and trade-mark. On investigating the matter Reardon discovered that the trade-mark "Mouse Seed," except for simplified spelling ("Mouseed"), had been registered in the Patent Office of the United States in the year 1923, by one Theodore Meyer, of Philadelphia. Reardon went to Philadelphia and in June, 1925, bought from Meyer the right to use the trade-mark everywhere except Philadelphia, Pa., Atlantic City, N. J., and Washington, D. C. Reardon then incorporated the plaintiff corporation and started in the business of manufacturing a poison grain and marketing it in small packages bearing the trade-mark spelled both ways, "Mouse Seed" and "Mouseed." Hagedorn protested to Reardon that his action was an infringement upon his (Hagedorn's) rights but brought no suit, and in March, 1927, the plaintiff corporation purchased Hagedorn's entire business including the trade-mark "Mouse Seed." The plaintiff then began to develop the business, spending considerable sums of money for advertising, during the years 1927, 1928, and 1929, in various magazines of general circulation and extended its business into every state in the Union. In the year 1930, Meyer having died, the plaintiff acquired from his estate the rights to the United States trade-mark registration but did not acquire the Meyer business in Philadelphia.

The business of the defendant the B. & B. Exterminators, Inc., was incorporated in 1929 and succeeded a firm of which the defendant Henry L. Barham was one of the partners. Barham had been familiar with the sale of poison grains, for rodent extermination, for some years and some time in the year 1928 learned of the plaintiff's article sold under the name of "Mouse Seed" from a distributor of the plaintiff's products in Baltimore, Md., and in the year 1930, the defendant the B. & B. Exterminators, Inc., with which Mr. Barham was then connected, began the manufacture and sale of an exterminator under the name of "B. & B. Mouse Seed," using packages similar to those used by the plaintiff.

This suit was brought in November, 1932, after the defendant the B. & B. company had been marketing its product about two years, but Reardon, the president of the plaintiff, testified that the suit was brought promptly after notice was first had of the defendants' product, and this was not denied. The individual defendants, Barham and Stover, were the chief officers and stockholders of the defendant the B. & B. company, at the time of the bringing of the suit and actively participated in the marketing of the product. Since then the defendant Barham has sold his stock and retired from the defendant corporation and is now engaged in a similar business in competition. The plaintiff originated and has used "Rat Seed" or "Ratseed" as a companion trade-mark to its "Mouse Seed" trade-mark.

Plaintiff's contention is based upon the common-law right to the trade-mark which was acquired from its predecessors, Green, Burke, and Hagedorn, and which the plaintiff contends has been added to and made more valuable by its own extended use of the trade-mark since acquiring the business from Hagedorn. No claim is made by the plaintiff's attorneys under the assignment from Meyer of the registered trade-mark.

Every one is entitled to fairly describe the goods which he makes or sells and a mere descriptive mark or name cannot be appropriated as a trade-mark to the exclusion of all others who wish to use the same words. Warner & Co. v. Lilly & Co., 265 U. S. 526, 44 S. Ct. 615, 68 L. Ed. 1161; Beckwith v. Commissioner of Patents, 252 U. S. 538, 40 S. Ct. 414, 64 L. Ed. 705; Chapin-Sacks Mfg. Co. v. Hendler Creamery Co. (C. C. A.) 254 F. 553; Autoline Oil Co. v. Indian Refining Co. (D. C.) 3 F.(2d) 457; Nims on Unfair Competition and Trade Marks (3d Ed.) § 201. Such words, if descriptive only, will not be valid as a trade-mark if reasonably indicative of the general nature or character of the article. Trinidad Asphalt Co. v. Standard Paint Co. (C. C. A.) 163 F. 977, affirmed 220 U. S. 446, 31 S. Ct. 456, 55 L. Ed. 536; Rumford Chemical Works v. Muth (C. C.) 35 F. 524, 1 L. R. A. 44; 38 Cyc. 711. But, however, if the words are merely suggestive of the character of the goods or the properties which the users of the mark wish the public to attribute to them and not merely descriptive, the mark will be good. Holeproof Hosiery Co. v. Wallach Bros. (C. C. A.) 172 F. 859; Elastic Bookcases (Globe-Wernicke Co. v. Brown) (C. C.) 121 F. 185. The only question in this case, as to the trade-mark, is whether it is descriptive only and not susceptible of exclusive appropriation or whether it is uniquely suggestive. In considering this question it is plainly to be seen that the words used separately are descriptive. When one uses the word mouse there is no doubt as to what the word describes and there is nothing unique about it; its use brings at once to the mind the picture of a small rodent, a well known animal. Likewise the use of the word seed at once conveys to the mind something from which plants may be germinated, such as seed wheat or tobacco seed, or something to be used as food, such as bird seed. In the ordinary acceptance of the word "seed" it would never convey to the mind by its use alone anything poisonous. But when the two words are coupled together to make "Mouse Seed" there is no immediate meaning conveyed but a suggestion to the mind as to what the term could mean and the two words used in conjunction cease to be descriptive and become suggestive. Mature thought would probably lead to but one conclusion—that a mouse poison was indicated—but it requires thought to reach this conclusion. The words used together possess an element of incongruity which make them unusual and unique and therefore, in our opinion, a valid trade-mark. In addition to this some weight must be given to the fact that the patent office registered "Mouse Seed" as a trade-mark showing that it was considered susceptible of appropriation as a mark. Chapin-Sacks Mfg. Co. v. Hendler Creamery Co., supra.

A similar question with regard to this same trade-mark was decided in Reardon v. Miller, 146 Misc. 508, 261 N. Y. S. 594, 595, where the court said:

"In Barrett Chemical Co. v. Stern, 176 N. Y. 27, 30, 68 N. E. 65, 66, the Court of Appeals held that the manufacture of a preparation for destroying roaches known as 'Roachsault' was not entitled to enjoin another who subsequently placed upon the market a product described as 'Roach Salt.' The court in its opinion pointed out that the word 'Roach' was descriptive of the insects for the destruction of which the articles were intended, that the word 'salt' is a 'word in common use to describe chemical preparations,' and that 'the case in its legal aspect is practically the same as if each party had labeled his goods "Roach Poison" instead of "Roach Salt." They are all common descriptive words indicating to the purchaser of the article that it was a powder or preparation for destroying roaches or other insects.'

"In the instant case the plaintiff's products are known as 'Mouse Seed' and 'Rat Seed.' The defendants have recently com-

menced to manufacture and sell a preparation labeled 'Mouse and Rat Seed.' If the word 'Seed' were used to describe an article intended to propagate plants, flowers, or other forms of vegetable or animal life, the case would no doubt be analogous to the Barrett Chem. Co. Case, supra, since the word 'seed' would be truly descriptive of the product itself. When the word is, however, applied to a product intended for the extermination of mice and rats, it seems to me that it is not used in its natural significance, and that it may be said to have acquired a secondary meaning, capable of exclusive appropriation. As applied to a rat poison or mouse poison, the word 'seed' is fanciful and not descriptive. See Nims on Unfair Competition and Trade-Marks (3d Ed.) c. 4. The motion for a temporary injunction is accordingly granted."

We agree with this reasoning of the New York court.*

 It is also well established that even a descriptive mark or name will be protected if it has acquired a secondary significance. Barton v. Rex-Oil Co., Inc. (C. C. A.) 29 F.(2d) 474; Computing Scale Co. v. Standard Computing Scale Co. (C. C. A.) 118 F. 965; Chapin-Sacks v. Hendler (C. C. A.) 254 F. 553; Nims on Unfair Competition & Trade Marks, § 37; Anheuser-Busch, Inc., v. Budweiser Malt Products Co. (C. C. A.) 295 F. 306; Coca-Cola Co. v. Koke Co., 254 U. S. 143, 41 S. Ct. 113, 65 L. Ed. 189.

We agree with the conclusion reached by the learned judge below that the use of the packages by the defendants was unfair practice and that the plaintiff was entitled to an injunction against their use, and we also agree with the conclusion that the plaintiff has not made such a case as would justify an accounting either for profits or damages. The burden was upon the plaintiff to make such a case. Ammon & Person v. Narragansett Dairy Co. (C. C. A.) 262 F. 880. While the plaintiff is excused from any defense of laches by the statement of its president that he proceeded promptly after first notice of infringement, nevertheless this is indicative that the plaintiff's business was not substantially interfered with by the defendant's competition. Hanover Star Milling Co. v. Metcalf, 240 U. S. 403, 36 S. Ct. 357, 60 L. Ed. 713; Straus v. Notaseme Co., 240 U. S. 179, 36 S. Ct. 288, 60 L. Ed. 590; Reid, Murdoch & Co. v. H. P. Coffee Co. (C. C. A.) 48 F.(2d) 817; Rushmore v. Badger Brass Mfg. Co. (C. C. A.) 198 F. 379; Nims on Unfair Competition and Trade Marks, §§ 424, 424(b) and 425. The decree of the court below will be so modified as to enjoin the defendants from any further use of the trade-marks "Mouse Seed," "Mouseed," "Rat Seed," and "Ratceed." The cost of this appeal will be assessed against the defendants.

Modified.

* Note.—For cases discussing similar questions, see the following: O'Rourke v. Central City Soap Co. (C. C.) 26 F. 576; Wonder Mfg. Co. v. Block et al. (C. C. A.) 249 F. 748; Battle & Co. v. Finlay et al. (C. C.) 45 F. 796; Allen v. Walker & Gibson (D. C.) 235 F. 230; Heublein v. Adams (C. C.) 125 F. 782; Stoughton v. Woodard (C. C.) 39 F. 902; Globe-Wernicke Co. v. Brown et al. (C. C.) 121 F. 185; American Fibre-Chamois Co. v. De Lee et al. (C. C.) 67 F. 329; Consolidated Ice Co. v. Hygeia Distilled Water Co. (C. C. A.) 151 F. 10; Hughes v. Alfred H. Smith Co. (C. C. A.) 209 F. 37; American Grocery Co. v. Sloan et al. (C. C.) 68 F. 539; Pennsylvania Salt Mfg. Co. v. Myers (C. C.) 79 F. 87; Selchow et al. v. Baker, 93 N. Y. 59, 45 Am. Rep. 169; Tetlow v. Tappan (C. C.) 85 F. 774; Automatic Recording Safe Co. v. Bankers' Registering Safe Co. (D. C.) 224 F. 506, 511, reversed in part (C. C. A.) 241 F. 472.