GENERAL SHOE CORPORATION v. ROSEN.

No. 4581.

Circuit Court of Appeals, Fourth Circuit.

April 10, 1940.

Rehearing Denied May 27, 1940.

See 112 F.2d 561.

Ernest P. Rogers, of Atlanta, Ga., and Herman Bennett, of Charleston, W. Va. (Hirsch, Smith & Kilpatrick, of Atlanta, Ga., on the brief), for appellant.

R. K. Talbott, of Charleston, W. Va. (B. J. Pettigrew, of Charleston, W. Va., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and BARKSDALE, District Judge.

SOPER, Circuit Judge.

The General Shoe Corporation, plaintiff in the District Court, brought this suit against Isadore Rosen to protect its trade marks, "Friendly" and "The Friendly Five", as applied to shoes. The plaintiff is a Tennessee corporation which in 1925 took over the business of the Jarman Shoe Company, a copartnership engaged in the manufacture of shoes, under whose name the marketing of the product has since been continued. The defendant is a resident of Charleston, West Virginia, where he owns and operates three retail men's furnishing stores on the same street. He began business in 1929 with one store under the name of the "Men's Shop". In 1935 he changed the name to the "Friendly Men's Shop" and within two years established the other stores under the same name. In general, the charge is that the defendant has so used the word "Friendly" in and about his shops in connection with the display and sale of shoes as to be guilty of infringement of the trade marks and also of unfair competition. The plaintiff seeks injunction against further infringement, but does not ask an accounting for profits or damages. The defense is that the trade mark "Friendly" is descriptive, and therefore invalid; that the use of the trade mark "The Friendly Five" by the defendant has been so slight since 1933 that it need not be considered in this case; that there has been no infringement of the trade marks and no unfair competition since the de-

fendant has not used the name "Friendly" in connection with his shoes in such a way as to lead the public to believe, contrary to the fact, that he sells the plaintiff's products. The District Judge found for the defendant and dismissed the bill.

The copartnership known as Jarman Shoe Company began to use the two trade marks for its shoes in 1924, and in 1925 registered the marks in the Patent Office as assignor to the plaintiff corporation. It has been the practice of the plaintiff to stamp the marks in different forms of type on the soles of its shoes, and also to print the name on labels affixed to the cartons in which the shoes are kept or shipped. The goods have been extensively advertised under the trade marks, with the result that they are now handled by five thousand dealers and are sold in all of the states of the union and in eighteen foreign countries. Window cards bearing the trade marks and used for display by the dealers have been furnished by the plaintiff, and the dealers themselves have advertised in local newspapers. In 1929 the plaintiff began to advertise in magazines of national circulation, and this practice has been continued to the present day. The name, "The Friendly Five", was used extensively until 1933 when it was decided to concentrate marketing efforts upon the name "Friendly", although the longer term has been retained and used to a small extent. In 1931 and 1932 radio broadcasting was employed on a national scale, featuring the name "Friendly Five". It was also used in 1935 to feature the term "Friendly". Billboard advertising has been used on a national scale. Dealers have been furnished with advertising matter bearing the trade marks, including postal cards, envelopes, ash trays, advertising cuts, etc. In all, a sum in excess of one million dollars has been spent in advertising. The volume of sales has reached the sum of forty million dollars, of which more than one-half has consisted of goods bearing the trade name "Friendly". Annual sales approximate four million dollars. The shoes have been sold in West Virginia continuously since 1929 and in Charleston in that state since 1932.

Prior to 1936 the plaintiff used the trade mark "Friendly" by itself in advertising matter upon the goods. Since that date it has been the unbroken custom to stamp the name on the goods in connection with the word "Jarman", which is also a regis-

tered trade mark of the plaintiff. In some instances the emphasis is put on one word, and in other instances on the other. The advertising matter furnished or suggested by the plaintiff to its dealers, to be used by them in local newspapers, puts particular emphasis on the word "Friendly" in connection with the name of the dealer. This is true also of Neon signs and other advertising articles furnished by the plaintiff for use by the dealers. To some extent the word "Friendly" is given especial emphasis, separate and apart from the name "Jarman" or "Jarman Shoe Company", in plaintiff's national advertising.

The plaintiff has also used from time to time the slogan "Friendly to the Feet" in connection with its trade marks. It is a fair conclusion from the evidence that no other shoe manufacturer uses or has used the trade marks in suit, and also that the shoe trade very generally, and the public to a considerable extent, are aware that these trade marks indicate the plaintiff's goods.

The defendant, as we have seen, changed the name of his business from "Men's Shop" to "Friendly Men's Shop" in 1935, in which year he registered the new name in West Virginia under the state Trade Mark Statute, West Virginia Code, Ch. 47, Art. 2. His declared purpose, according to his answer in this suit, was to distinguish his shop from other like establishments in Charleston, and he declared that he sought also to distinguish the shoes sold by him, amounting from 10 to 15% of his gross sales, from the plaintiff's shoes by stamping the word "Friendly", as contained in the name of his shop, on the soles of his shoes in script rather than in print, as often used by the plaintiff on its shoes.

The word "Friendly" has been used on the shop fronts of the defendant, not only as part of the full name, but has also been displayed separately outside and inside his shop windows containing shoes in such a fashion as to suggest to a passerby familiar with the plaintiff's marks that the goods were made by the plaintiff. The word "Friendly" has also been separately set into the tiled entrance into one or more of the stores. It has also been stamped on soles of some of the shoes sold by the defendant in connection with the word "Men's Shop" which appeared in smaller letters below.

This use of the word "Friendly" by the defendant in connection with the sale of

his shoes led the Charleston dealer in "Friendly" shoes to complain, and the plaintiff filed a protest with the defendant and undertook an investigation of his methods. In the latter part of 1936 and the early part of 1937 attorneys, representing the plaintiff, wrote a number of letters to the defendant complaining that he was using the term "Friendly" in the conduct of his business, and was stamping the name on his shoes and thereby infringing the plaintiff's trade mark "Friendly". He was asked to discontinue the use of the name. He replied, calling attention to the registration of the name "Friendly Men's Shop" under the West Virginia statute, and refusing to discontinue its use; but expressed the intention to discontinue the practice of stamping the name on shoes sold by him after the sale of a few remaining in his stores.

Subsequently, an agent of the plaintiff in March 1937 ordered a pair of "Friendly" shoes from the defendant by mail and the order was filled. The agent was sent a pair of shoes on the soles of which was stamped the word "Friendly" above the words "Men's Shop" that appeared in smaller type. The price was $2.83 as compared with the price of $5 for which the Friendly shoes were usually sold. The shoes were packed in a box to which was affixed a label in which the word "Friendly" was conspicuously displayed above the words "Men's Shop" in smaller type; and the label also contained the slogan sometimes used by the plaintiff: "Friendly to Your Feet". The colors of the label on the box were similar to the colors used by the plaintiff in the labels on its boxes.

Later in the same month, the agent visited the defendant's stores in Charleston in order to purchase shoes in person. At one store he was told that they did not sell Friendly shoes. At another store he was sold a pair as Friendly shoes, and they were delivered to him in a box similar to that which he received through the mail. At the third store he was also sold a pair of shoes and was told that they were Friendly shoes, but stamped on the soles was the name "Autograph". As the result of these circumstances, the plaintiff brought suit against the defendant in July, 1937.

■ Coming to the defense that the marks are descriptive of the qualities of the goods, and are therefore invalid under the familiar rule of law, we confine ourselves to a consideration of the term "Friendly", since it is the use of this word by the defendant in the sale of shoes that is the burden of the complaint; and the evidence as to the present use of the phrase "The Friendly Five" by the defendant is too scant to justify an unnecessary ruling. Under the well established rule of trade mark law, a word or phrase which is primarily descriptive of the article to which it is attached may not be appropriated by any one as his exclusive trade mark. Columbia Mill Co. v. Alcorn, 150 U.S. 460, 14 S.Ct. 151, 37 L.Ed. 1144; Kellogg Toasted Corn Flake Co. v. Quaker Oats Co., 6 Cir., 235 F. 657; Bennett v. McKinley, 2 Cir., 65 F. 505. On the other hand, an arbitrary or fanciful name, which has no relationship to the product, may be lawfully adopted and monopolized. Hamilton Brown Shoe Co. v. Wolf Bros. & Co., 240 U.S. 251, 36 S.Ct. 269, 60 L.Ed. 629.

Between these two extremes lies a middle ground wherein terms of mingled qualities are found. It cannot be said that they are primarily descriptive or that they are purely arbitrary or fanciful without any indication of the nature of the goods which they denominate. Such terms, indeed, shed some light upon the characteristics of the goods, but so applied they involve an element of incongruity, and in order to be understood as descriptive, they must be taken in a suggestive or figurative sense through an effort of the imagination on the part of the observer. Many such suggestive terms have been approved as valid trade marks by the courts, e. g., "Mouse Seed" as applied to poisoned grain for mice, W. G. Reardon Laboratories v. B. & B. Exterminators, 4 Cir., 71 F.2d 515; "Arch Builder" and "Heel Leveler" as applied to shoes, In re Irving Drew Co., 54 App.D.C. 310, 297 F. 889; "Chicken of the Sea", as applied to canned tuna, Van Camp Sea Food Co. v. Alexander B. Stewart Organizations, Cust. & Pat.App., 50 F.2d 976. See, also, Sierra Chemical Co. v. Berettini, 7 Cir., 33 F.2d 397. In our opinion, the word "Friendly", as applied to shoes, belongs in this classification. Primarily it is applied to animate objects in the sense of pertaining to a friend or befitting friendship. When used in a figurative sense in connection with an article of apparel it suggests one that is comfortable or suited to the needs of the wearer, as is indicated in the slogan "Friendly to the Feet"; but its appropriateness in this respect becomes apparent to the reader only after some mental effort on his part.

■ Our conclusion is that the term "Friendly" as applied to shoes, is a valid trade mark entitling the owner to the protection of the court; and it is not invalidated by the fact that in many instances, perhaps the majority, it has been used by the plaintiff on its goods and in its advertising matter in connection with its trade mark "Jarman". More than one trade mark may be used by the owner upon his wares without invalidating either. It is of course possible that marks may be so completely associated with one another in the minds of the public as not to indicate separately the origin of the goods. But the evidence in this case tends to show that no other manufacturer of shoes made use of the term "Friendly", and that it, as well as the term "Jarman", has come to denote the plaintiff's goods. See Loonen v. Deitsch, C.C.S.N.Y., 189 F. 487.

■ There is also sufficient proof of infringement in this case. Whatever may have been the intention of the defendant, the tendency of his practices to deceive the public insofar as his business related to the sale of shoes is manifest from the above recital of facts.

■ The claim of the plaintiff may also be vindicated by an appeal to the sanctions relating to unfair competition. The evidence shows that the term "Friendly" has acquired a secondary meaning by extensive advertising and large sales during a period of more than fifteen years. It has come to indicate to prospective purchasers that the shoes under it originate in the plaintiff's factory, and since the defendant's use of the term is likely to deceive the public, the plaintiff on this ground is entitled to an injunction. Armstrong Paint & Varnish Co. v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195; Holeproof Hosiery Co. v. Wallach Bros., 2 Cir., 172 F. 859; Kellogg Toasted Corn Flake Co. v. Quaker Oats Co., 6 Cir., 235 F. 657; W. G. Reardon Laboratories v. B. & B. Exterminators, 4 Cir., 71 F.2d 515; Chapin-Sacks Mfg. Co. v. Hendler Creamery Co., 4 Cir., 254 F. 553; Nims, Unfair Competition, 3d Ed., pp. 4, 106, 108, 544. Cf. Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73. The jurisdiction of the court on this aspect of the case is supported not only by diversity of citizenship of the parties and the requisite jurisdictional amount, but also by the fact that the allegations of the complaint with respect to the registered trade marks gave the court jurisdiction with power to deal with all grounds supporting the plaintiff's claim. Armstrong Paint & Varnish Co. v. Nu-Enamel Co., 305 U.S. 315, 324, 59 S.Ct. 191, 83 L.Ed. 195; Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148; Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272.

■ We do not think, however, as the plaintiff seems to suggest, that the defendant should be enjoined from the use of the name "Friendly Men's Shop" as the appellation of his business. There are well considered cases which hold that a manufacturer may not adopt, as part of the name of his business, the established trade mark of another, if thereby the public would be led to believe that the goods made by the former were produced by the latter. Vogue Co. v. Thompson Hudson Co., 6 Cir., 300 F. 509; Yale & Towne Mfg. Co. v. Haber, D. C., 7 F.Supp. 791; Wall v. Rolls Royce of America, 3 Cir., 4 F.2d 333; Del Monte Special Food Co. v. California Packing Corp., 9 Cir., 34 F.2d 774, and Mantle Lamp Co. v. Aladdin Mfg. Co., 7 Cir., 78 F.2d 426. But the rule does not permit one who has adopted a common word to indicate a product of his manufacture, so to monopolize the term as to exclude others from using it in any kind of business. See Rosenberg Bros. & Co. v. Elliott, 3 Cir., 7 F.2d 962. The property which the plaintiff has acquired in the word "Friendly" extends only to its use in relation to shoes, and the defendant did not trespass upon forbidden territory by incorporating the word within the name of his places of business. His offense consists in so using and displaying it in the shoe department of his establishments as to lead the public to suppose that his shoes came from the plaintiff's factory. The facts justify and require the issuance of an injunction, but it should be so limited as to enjoin the defendant from using the word "Friendly", either in or separate from the name of "Friendly Men's Shop", with respect to the display or sale of shoes, in such a way as to be likely to confuse the public and lead them to suppose that the defendant's goods had been made by the plaintiff.

The judgment will be reversed and the case remanded for further proceedings in accordance with this opinion.

Reversed.