**Q-TIPS, Inc. v. JOHNSON & JOHNSON**
(two cases).

Nos. 10988, 10989.

United States Court of Appeals
Third Circuit.

Argued May 8, 1953.

Decided June 26, 1953.

Rehearing Denied July 28, 1953.
Writ of Certiorari Denied Oct. 26, 1953.
See 74 S.Ct. 106.

See also, D.C., 109 F.Supp. 657.

W. Brown Morton, New York City (Pennie, Edmonds, Morton, Barrows & Taylor, New York City, W. Brown Morton, Jr., Stanton T. Lawrence, Jr., New York City, of counsel, on the brief), for Q-Tips, Inc.

Stewart W. Richards, New York City (Kenneth Perry, New Brunswick, N. J., H. Kenneth Haller, New York City, Arnold S. Worfolk, Herbert E. Bailey, New Brunswick, N. J., on the brief), for Johnson & Johnson.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

This case is based on trade-mark infringement. The plaintiff is the owner of the registered trade-mark "Q-Tips." The defendant manufactures and sells "Johnson's Cotton Tips." This, the plaintiff says, is a violation of its trade-mark. The district court agreed and filed a thoroughly considered opinion which sets out all the facts.[1] We shall repeat only those necessary for our discussion of the case.

The litigation is less complicated than would appear from a first reading of the numerous briefs. In the stubbornly contested lawsuit, with both parties represented by competent and experienced counsel, each has engaged in what is called in criminal court "throwing the book" at the other.

We may postpone again, as we have before, the issue whether we may build up

1. D.C.D.N.J.1952, 108 F.Supp. 845, 860–871.

our controlling law from federal precedent or must look to state law and if so where.[2] The parties are properly in federal court either by diversity of citizenship [3] or by the provisions of the Lanham Act.[4] We have not been referred to nor have we found a split of authority between federal and state rules to compel us to make the choice just mentioned.

The case may be simplified also by eliminating several other questions. In the first place there is no packaging of the defendant's goods in such a way that they may be mistaken, by reason of their appearance, for those of the plaintiff. The colors of the two competitors' packages are different. The defendant features the name Johnson on this as upon many other preparations put out by it in the bandage and allied fields. It is true that each package has on it a picture of crossed sticks with cotton wound about them at both ends. But we agree completely with the district judge that there is no such similarity in packaging that will serve as a basis of any charge of "palming off."

Nor is there anything in the suggestion that the so-called "dilution" doctrine has a point in this case. This is not a situation where a man has a trade-mark for an umbrella and raises the question whether another manufacturer may use a similar trade-mark for a mouth wash.[5] The ordinary rules of unfair competition and trade-mark infringement are sufficient to protect one from competitors, and plaintiff has no need to resort to the "dilution" doctrine here.

We shall not discuss here points raised by the defendant charging the plaintiff with misconduct which disentitles it to equitable relief under the clean hands doctrine. Insofar as those issues are present in the pending patent case between the present litigants they will be discussed there. For the purpose of the case now being considered we refer to and adopt the full explanation given by the district judge in which he found that this defense was not available against this plaintiff.[6]

The issues in the case, we think, get down to three. The first is whether the plaintiff has a trade-mark, for which it is entitled to legal protection, in the use of the term "Q-Tips" to designate a wooden stick with a cotton twist at each end. If this question is answered in the affirmative, the next question is whether the defendant has infringed that trade-mark by its selection of the name "Johnson's Cotton Tips." If, in turn, this question is answered in the affirmative, then the remaining issue is whether the district court was correct in giving the plaintiff an injunction but declining to order an accounting of profits and damages.

It is worth pointing out, at the start of our discussion, that we are in a field where the tendency of the law "has been in the direction of enforcing increasingly higher standards of fairness or commercial morality in trade. The tendency still persists." Restatement, Torts, Volume III, page 540. In any situation where the law is in the growing stage it is not to be expected that the advance in all courts will be simultaneous. Furthermore, when the final outcome on a given set of facts may vary, not with the legal concepts involved, but their application to particular states of fact, the pattern is inevitably less clear than in cases where a definite rule is to be applied.

A trade-mark is defined in Section 715 of the Restatement of Torts as follows:

"A trade-mark is any mark, word, letter, number, design, picture or combination thereof in any form of arrangement, which

2. Campbell Soup Co. v. Armour & Co., 3 Cir., 1949, 175 F.2d 795, certiorari denied, 1949, 338 U.S. 847, 70 S.Ct. 88, 94 L.Ed. 518. See also Steele v. Bulova Watch Co., 1952, 344 U.S. 280, 73 S.Ct. 252; Hyde Park Clothes, Inc., v. Hyde Park Fashions, Inc., 2 Cir., 1953, 204 F.2d 223.

3. Plaintiff is a New York corporation, de-

fendant is a New Jersey corporation, and the amount in controversy exceeds $3000.

4. 15 U.S.C.A. § 1121.

5. See Alfred Dunhill of London v. Dunhill Shirt Shop, D.C.S.D.N.Y.1929, 3 F.Supp. 487; Stork Restaurant v. Sahati, 9 Cir., 1948, 166 F.2d 348.

6. 108 F.Supp. at pages 867–871.

"(a) is adopted and used by a person to denominate goods which he markets, and

"(b) is affixed to the goods, and

"(c) is not, except as stated in §§ 720–722, a common or generic name for the goods or a picture of them, or a geographical, personal, or corporate or other association name, or a designation descriptive of the goods or of their quality, ingredients, properties or functions, and

"(d) the use of which for the purpose stated in Clause (a) is prohibited neither by legislative enactment nor by an otherwise defined public policy."

We take it that there is no doubt that "Q-Tips" is a proper trade-mark unless it falls within clause (c) of the cited material as either a generic name for the goods or a designation descriptive of them. The defendant urges both points. The plaintiff, it must be said, gave some support to the defendant's theory that "Q-Tips" is a generic term by putting out, for a limited period of time, a kit of baby toilet preparations under the general designation "Q-Things." In the kit were items named "Q-Talc," "Q-Soap," "Q-Oil," "Q-Cream," and "Q-Tips." But this was soon given up. Our conclusion is firmly that "Q-Tips" is not a generic name for goods and so does not fall within cases of the "aspirin" type.[7]

Is the name "Q-Tips" descriptive? Here the dogma is that if the trade-mark term is merely "suggestive" it may be a valid trade-mark. If it is "descriptive" it will not do. These two terms are very much like the words "cause" and "condition" in negligence cases. If a contributing factor is not close or large enough to be called "cause" then it is characterized as a "condition" and is not an element in building up a case of liability against a defendant. So here; if we characterize the term as "descriptive," then we have no trade-mark.

It is pretty clear that the two terms are not mutually exclusive. There must be some description in almost any suggestion or the suggesting process will not take place. So what we have in any trade-mark case is a matter of judgment as to what side of the line the question mark falls upon. It is desirable to protect a trader who has built up public association with a product under his trade-mark from having his business taken by somebody else. It is also desirable to keep the channels of expression open by not giving protection to people who go out and take ordinary, descriptive words and then claim something like a property right in them.

The "Q" part of the plaintiff's mark is satisfactory enough. This is true whether it is taken as an arbitrary symbol or taken, in connection with the second word, to give the loathsome adjective "cute" in front of the word "tips." "Tips," obviously, is a regular dictionary word. It means "the pointed or rounded end or extremity of anything." The wood sticks, which with their cotton ends make "Q-Tips," are rounded by the machine-applied cotton at each end. But this is a fanciful use of the term. The standard medical and surgical dressing talk for gadgets of this kind would be a "swab," which is a "bit of sponge, cloth, absorbent cotton, or the like, for applying medicaments to a sick person or animal, or for removing tenacious discharges from the mucous membranes * * *"; or "applicator," which is "a device for applying medicine to the nose, throat or other cavity * * *." When Johnson and Johnson called their sticks with cotton wrapped around the end "Cotton-Tipped Applicators" they were using a term as descriptive as that of "tenpenny nail." We shall speak later of what we think happened when they moved to "Cotton Tips" instead.

■ We have then in this case a two syllable trade-mark. The first, "Q," pure-

---

7. The relevant sections of Restatement, Torts, are § 721 and § 735. For cases of generic names see Bayer Co. v. United Drug Co., D.C.S.D.N.Y.1921, 272 F. 505; Dupont Cellophane Co. v. Waxed Products Co., 2 Cir., 1936, 85 F.2d 75, certiorari denied, 1936, E. I. Du Pont De Nemours & Co. v. Waxed Products Co., 299 U.S. 601, 57 S.Ct. 194, 81 L.Ed. 443; Kellogg Co. v. National Biscuit Co., 1938, 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73.

ly arbitrary and fanciful; the second closer to being descriptive but still used, even in ordinary parlance, in an unusual way. Combined they constitute a trade-mark which is the subject of protection by the law.[8]

The second question is whether the defendants have infringed the plaintiff's trade-mark by their use of the term "Johnson's Cotton Tips." Here it is worth pointing out that "The issue of confusing similarity is an issue of fact as to the probable or actual reactions of purchasers."[9] This fact has been determined by the trial judge, and as a determination of a question of fact it is entitled to great respect under F.R.C.P. Rule 52(a), 28 U.S.C. We think the evidence is not only sufficient to support the conclusion but that it is strong enough so that it does not need the protection of the "clearly erroneous" clause of the rule mentioned.

One of the elements to be considered in deciding whether there is confusing similarity is the intent of the actor who adopts the designation.[10] It is interesting to note, on this phase of the matter, the development of "Cotton Tips" by defendant. It formerly put out a product called "Cotton-Tipped Applicators." These were sold to hospitals and physicians' offices. The term was descriptive and non-appealing. They could also be called swabs, but the definition of that term already quoted shows the unesthetic connotation that goes with the use of the term. So the defendant submitted the matter to its advertising agency, a large, experienced and well established concern. The evidence shows a list of dozens of names suggested by various employees, many of which are arbitrary, fanciful and completely unlike anything suggested by the plaintiff's product. But in the end defendant's top management came up with the name under discussion, "Cotton Tips."

It is quite clear why, with all the possibilities open to it, defendant made this choice. "Tips" had never been used as part of a trade-mark for this product until plaintiff coined "Q-Tips." The numerous competitors in the field had got along well enough without using the word, and still do so. It can scarcely be said that "tips" is a reasonably necessary word to describe the product to the public. Whenever a competitor sought to use "tips," plaintiff compelled him to stop. An injunction was obtained against "Twin-Tips" in Q-Tips, Inc., v. Glickston, D.C.E.D.N.Y. 1939, 27 F.Supp. 948. The Mennen Company voluntarily abandoned "Tips-for-Tots" when plaintiff objected. The only exception is the use of "tips" by Canadian firms, one of which appears to be the same competitor who was enjoined in the Glickston case.

"Q-Tips" has enjoyed tremendous popularity. When defendant entered the field plaintiff was making 90% of the prepared swabs in the United States. The evidence is convincing that defendant made its choice of "Cotton Tips" in order to come as close as it thought legally possible to "Q-Tips" and bask in the reflected popularity of plaintiff's name.

We do not mean to stress this particular factor of intent to the exclusion of others to be considered. We think as one runs through the list as set out in the section of the Restatement quoted, and checks each one with the evidence here, that complete support may be found for the conclusion that there was infringement.

While citations of individual cases can only help show the general pattern and not help very much in the particular case under consideration, we think that the citation of a few will be helpful in showing that the conclusion here does follow that general pattern. See deCordova and Others v. Vick Chemical Coy., decided

8. The validity of a trade-mark is to be determined by viewing it as a whole. Even if each word of a mark is descriptive, the combination may still be fanciful. See Franklin Knitting Mills v. Fashionit Sweater Mills, D.C.S.D.N.Y. 1923, 297 F. 247; W. G. Reardon Laboratories v. B. & B. Exterminators, 4 Cir., 1934, 71 F.2d 515.

9. Restatement, Torts, § 728, Comment a. See § 729 as to the factors which are to be considered in determining confusing similarity.

10. Restatement, Torts, § 729(b).

by the Privy Council of the House of Lords, March 15, 1951, reported in Vol. LXVIII Rep. Pat., Des. § TM Cas. 103 ("VapoRub" for a medicated ointment held neither descriptive nor generic in popular thought, even though product technically known as a vapour rub, and infringed by "Vapour Rub"); W. G. Reardon Laboratories v. B. & B. Exterminators, 4 Cir., 1934, 71 F.2d 515 ("Mouse Seed" for a rodent poison composed of poisoned seeds held fanciful and infringed by "B. & B. Mouse Seed"); Telechron v. Telicon Corp., 3 Cir., 1952, 198 F.2d 903 ("Telechron" for radio and television sets held fanciful, though composed of two well-known Greek stems, and infringed by "Telicon"); Western Oil Refining Co. v. Jones, 6 Cir., 1928, 27 F.2d 205 ("Silver Flash" for gasoline held fanciful, though "flash" regarded in the trade as descriptive, and infringed by "Super-Flash"); Wonder Mfg. Co. v. Block, 9 Cir., 1918, 249 F. 748 ("Arch builder" for shoes held distinctive because used in a secondary sense of the words, and infringed); Holt v. Metropolitan Refining Co., D.C.E.D.N.Y.1935, 9 F.Supp. 662 ("Rust-I-Cide" for a rust remover held fanciful and infringed by "Rusticide"). But as already indicated, the authorities do not always speak in the same tones when applying undisputed law to varying states of fact. See, for instance: Thomas Kerfoot & Co. v. Louis K. Liggett Co., 1 Cir., 1933, 67 F.2d 214 ("Vapex" for an inhalant not infringed by "Vapure" because "Vap-" descriptive and "-ex" is dissimilar from "-ure"); James Heddon's Sons v. Millsite Steel & Wire Works, 6 Cir., 1942, 128 F.2d 6, certiorari denied, 1942, 317 U.S. 674, 63 S.Ct. 79, 87 L.Ed. 541 ("Head-On Basser" for fish bait not infringed by "Millsite Bassor" because the similar part, "basser," is descriptive); Pepsi-Cola Co. v. Krause Bottling Co., 4 Cir., 1937, 92 F.2d 272 ("Pepsi-Cola" not infringed by "Pep-Ola" because "Pep" is descriptive and the two are not confusingly similar).

Defendant makes the further point that it uses "Cotton Tips" not as a trade-mark but descriptively to tell purchasers what is in the box. Therefore, it argues, it comes within 15 U.S.C.A. § 1115(b) (4) which embodies the rule that, regardless of the validity of a plaintiff's mark and the confusing similarity to it of words used by defendant, there is no infringement if defendant uses the words not as a trade-mark but only descriptively. Defendant tried its best to make it look as if it used "Cotton Tips" descriptively. It did not claim the words as a trade-mark and made no effort to register them as such. Instead it endeavored to create a descriptive or generic use of the name and to carry the plaintiff's name along with it in such uses. It changed the description of what it had formerly called "Cotton-Tipped Applicators" in all its trade literature, price lists, and so on, to "Cotton Tips," and embarked on a campaign to persuade its employees that the name of the product was "Cotton Tips." We do not think it succeeded, and neither did the district court.

The third question is what relief does the plaintiff get? The court gave the plaintiff injunctive relief but denied its demand for accounting of profits and damages. The reason for this was that the evidence as to cost of marketing the defendant's product, and the testimony of the plaintiff itself showing that there had been no decisive decline in its business, convinced the court that such an investigation would be useless. In other words the plaintiff had suffered no loss, the defendant had made no profits, and the plaintiff would get full protection if the defendant stopped the forbidden practice. These considerations, which we treat as findings although they were not formally designated as such, quite distinguish our problem here from that in our current decision of Century Distilling Company v. Continental Distilling Corporation, 3 Cir., 1953, 205 F. 2d 140.

The question as to recovery of profits and damages has been several times before the Supreme Court. The relevant citations are: Champion Spark Plug Co. v. Sanders, 1947, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386; Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 1942, 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381; Straus v. Notaseme Hosiery Co., 1916, 240 U.S. 179,

36 S.Ct. 288, 60 L.Ed. 590; Saxlehner v. Siegel-Cooper Co., 1900, 179 U.S. 42, 21 S.Ct. 16, 45 L.Ed. 77.[11]

We think the Supreme Court's discussion adds up to the proposition that if there is no showing that the plaintiff's business has been hurt or that the defendant has made profit out of the infringement, there is no call for relief other than that given by injunction. We think that rule fits this case. If the plaintiff had other evidence that indicated something else, he is too late if he kept it for a second bite of the cherry.

The judgment of the district court will be affirmed in appeals No. 10,988 and No. 10,989.

11. See also Restatement, Torts, §§ 745–748.